RISNER v CITY OF WYOMING

Docket No. 79760. Submitted April 9, 1985, at Lansing.—Decided
December 2, 1985.

The City of Wyoming enacted an ordinance restricting the num-
ber of days temporary display signs could be displayed. The
ordinance defined a temporary display sign as any sign larger
than 12 square feet that is not permanent and relating directly
to the use of the parcel of land or building and limited display
of a temporary sign to a total of 60 days per year. However, the
ordinance also limited any period of continuous display to 30
days, and a permit had to be obtained any time a temporary
sign was to be used, with the permits being valid for periods of
from 7 to 30 days. Roger Risner, a businessman in the city who
had used temporary signs, filed suit against the City of Wyo-
ming in Kent Circuit Court seeking a declaratory judgment
that the ordinance violates the First Amendment of the United
States Constitution. The court, George R. Cook, J., granted
defendant's motion for summary judgment, finding that, be-
cause the city did not prohibit plaintiff from advertising his
business, no First Amendment issue was presented to the court.
The court held that the ordinance restricting display to 60 days
a year was a valid exercise of the city's police power under the
home rule cities act. Plaintiff appealed. *Held:*

The City of Wyoming's ordinance permitting use of tempo-
rary display signs for 60 days per year violates the First
Amendment because it fails to sufficiently advance the govern-
mental interests asserted, *i.e.,* traffic safety, aesthetics, and
safety from electrical hazards, and reaches further than neces-
sary to accomplish those objectives.

Reversed.

REFERENCES

Am Jur 2d, Constitutional law §§ 496 *et seq.*

Validity and construction of state or local regulation prohibiting off-
premises advertising structures. 81 ALR3d 486.

Validity and construction of state or local regulation prohibiting
the erection or maintenance of advertising structures within a
specified distance of street or highway. 81 ALR3d 564.

1. CONSTITUTIONAL LAW — COMMERCIAL SPEECH — FIRST AMEND-
   MENT.

   The First Amendment protects commercial speech only if that
   speech concerns lawful activity and is not misleading (US
   Const, Am I).

2. CONSTITUTIONAL LAW — COMMERCIAL SPEECH — FIRST AMEND-
   MENT.

   A restriction on otherwise protected commercial speech is valid
   only if it seeks to implement a substantial governmental inter-
   est, directly advances that interest, and reaches no further
   than necessary to accomplish the given objective.

*Kooistra, Sullivan & Pettinga (by Ronald J. Kooistra),* for plaintiff.

*Garlington, Sluiter & Agents (by Jack R. Sluiter),* for defendant.

Before: R. B. BURNS, P.J., and SHEPHERD and B. A. JASPER,* JJ.

B. A. JASPER, J. This suit involves the validity of an ordinance enacted by defendant, the City of Wyoming, Michigan, concerning the use of temporary display signs. Plaintiff filed a complaint in Kent County Circuit Court seeking a declaratory judgment that the ordinance violates the First Amendment to the United States Constitution. After the submission of briefs and oral arguments, the trial judge granted summary judgment to defendant finding that the facts did not present a First Amendment issue. This appeal follows as of right. We find that a First Amendment issue was presented; our analysis of that issue leads us to reverse.

In July of 1982, the City of Wyoming, as part of its comprehensive sign regulation ordinance, enacted an ordinance which restricts the number of

* Recorder's court judge, sitting on the Court of Appeals by assignment.

days temporary display signs are allowed to be displayed. A temporary display sign is defined under the ordinance as "[a]ny sign that is larger than 12 square feet that is not permanent and relating directly to the use of the parcel of land or building". Wyoming Ordinance 1-82, § 60.1, (86)(c). A permanent sign is defined as "[a]ny sign permanently affixed to a building or ground and relating directly to the use of the parcel of land or building". *Id.*, § 60.1, (86)(b). Specifically, the ordinance limits display of a temporary sign to a total of 60 days per year. However, the ordinance limits any period of continuous display to 30 days. Any time a temporary sign is used, a permit must be obtained. The permits can be obtained for a minimum period of 7 days to a maximum period of 30 days. *Id.*, § 60.121(1). Permit fees are used to enforce various restrictions on the use of temporary signs, such as set-back from public right-of-ways, size, illumination, and wiring requirements.

Gordon Foster, former building inspector for the City of Wyoming and one of the individuals who helped write the challenged ordinance, testified that the mobility of temporary signs created numerous problems. These included the illegal placement of signs on public property, placement blocking the vision of traffic from business driveways and at right-of-ways, and inadequate anchoring. Other problems were hazardous temporary electrical wiring including use of extension cords exposed to the elements, and illumination by bulbs or lights imitating traffic control signals. Foster also testified that part of the perceived problem of temporary signs was aesthetics. He testified that there was evidence of 15 to 20 signs, on both occupied and unoccupied premises, with broken frames, parts hanging from them, or with only a few or no letters on their faces. These poorly kept

signs were causing a particular problem in areas of blight where rehabilitation efforts were under way.

Plaintiff, a businessman in the city, testified that in the past he had used temporary signs, but had ceased using them because of the ordinance. The trial judge held that because the city did not prohibit plaintiff from advertising his business, a First Amendment issue was not presented to the court. The court held that the ordinance restricting display to 60 days a year was a valid exercise of the city's police power under the home rule cities act.

We find that a First Amendment issue is presented by plaintiff's complaint. Commercial speech, once excluded from the coverage of the First Amendment, now enjoys constitutional protection, *Central Hudson Gas & Electric Corp v Public Service Comm of New York,* 447 US 557; 100 S Ct 2343; 65 L Ed 2d 341 (1980); *Virginia State Board of Pharmacy v Virginia Citizens Consumer Council, Inc,* 425 US 748; 96 S Ct 1817; 48 L Ed 2d 346 (1976), although state and local governments have freer rein to regulate commercial speech than political or expressive speech. See *Metromedia, Inc v San Diego,* 453 US 490; 101 S Ct 2882; 69 L Ed 2d 800 (1981). In *Metromedia,* seven justices expressed approval of that portion of a San Diego ordinance which proscribed use of off-site billboard advertising. In doing so, five justices applied the following four-part test originally set forth in *Central Hudson Gas Co, supra,* pp 563-566:

"(1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly

advances that interest, and (4) reaches no further than necessary to accomplish the given objective." 453 US 507.

We are not called upon to determine if a total ban on this type of advertising would be permissible should the proper governmental interests be advanced.[1] However, our application of the above test leads us to hold that the City of Wyoming's ordinance, which permits use of temporary display signs for 60 days per year, violates the First Amendment. It is clear that the speech at issue is not unlawful or misleading. Further, traffic safety, aesthetics, and safety from electrical hazards are substantial governmental interests. See *Metromedia, supra,* pp 509-510. However, we hold that the ordinance is unconstitutional because it fails to sufficiently advance the governmental interests asserted or reaches further than necessary to accomplish those objectives.

Foster admitted that all of the hazards allegedly created by the temporary display signs are otherwise addressed by other provisions of the city sign code, traffic code and electrical code. Provisions of the sign code prohibit flashing lights, exposed bulbs or any illumination which would resemble traffic control signals, railroad signals, or other traffic signals. The sign code prohibits placing a sign where it is dangerous to traffic. The traffic code includes provisions requiring a minimum setback from the street. The city electrical code limits temporary wiring to a 60-day period. The city building code and life safety code each address anchoring of loose objects which might blow and hurt people. Thus, the traffic obstruction, poor

---

[1] A very strong argument could be made that such a total ban would be proper. See *e.g., Metromedia, Inc v San Diego, supra,* pp 507-508.

anchoring and electrical hazards caused by these signs, which the city has chosen to permit, are easily remedied by restrictions short of a ban 10 months out of the year.

Additionally, limiting use of temporary signs to 60 days per year does not directly advance the government's objective in abating those hazards. Electrical, traffic obstruction and poor anchoring hazards are as great during the 60 days of the year that use is permitted as in the remainder of the year. We find telling the following testimony of Foster:

"If there were not permits required and no inspections required, then we would not know whether there was a hazard at the site or not; we would not even know whether there was a sign at the site. *As far as a limit of time is concerned, a hazard is a hazard the first hour that it is put in place, the first minute it is put in place, and the relationship of that hazard to a specific length of time allowed really does not have any bearing on each other at all.* The idea of requiring a permit and limiting a time is so that an inspection would be made at the time that the sign was erected and at the time it was supposed to be taken down, so that the City would be assured that no hazard was allowed, it was allowed to start or be continued." (Emphasis supplied.)

The constitutional remedy for the above problems is either tighter restrictions, better enforcement, or both.[2]

Foster made reference to a claim that temporary signs, even absent flashing lights, are distracting

---

[2] Foster testified that the mobility of temporary signs causes many problems in enforcement which permanent signs do not present. Foster testified that one reason for the 60-day restriction was to prevent temporary signs from becoming "permanent" signs. We believe that the requirement of a permit and a reasonable fee sufficient to effectively police the lawful use of temporary signs should be sufficient to bridge the gap in enforcement problems between temporary and permanent signs.

to motorists. However, limiting use of temporary signs to limited periods for grand openings, special sales, etc., would only exacerbate any distraction problem. See *Dills v City of Marietta, Georgia,* 674 F2d 1377 (CA 11, 1982); *Metromedia, supra,* pp 511-512 (periodic content change of off-site advertising may be more distracting than on-site advertising, justifying the city's distinction between the two).

The aesthetic problem cited by Foster presents a close question. Limiting use of temporary signs to 60 days per year would certainly reduce the number of signs in disrepair at any one time. However, because the aesthetic problem cited is not a general objection to, say, a perceived garish appearance of the signs,[3] we find that the ordinance reaches further than necessary to accomplish the city's objectives. Foster testified that there was discussion about 15 to 20 such aesthetically unpleasing signs. Initially, we note that the bulk of the signs in disrepair were apparently on vacant premises where the signs had been abandoned for all intents and purposes. This could be remedied by limiting use of temporary signs to occupied premises. As to signs in disrepair on occupied premises, the aesthetic problems from hanging parts, broken glass, and broken frames could be

[3] Gerald Mears, Director of Planning for the City of Wyoming, testified that he could not be certain of the reasons behind regulation of temporary signs since he was not involved in enactment of the ordinance at issue. He testified, however, that in general temporary signs are frowned upon as aesthetically displeasing because they are generally nearer public right-of-ways than permanent signs which are placed in a particular location on the property selected by agreement of the city and the owner. We do not review Wyoming's ordinance in relation to these interests. We review legislation only on the basis of considerations actually contributing to its enactment. See *Weinberger v Wiesenfeld,* 420 US 636, 648; 95 S Ct 1225, 1233; 43 L Ed 2d 514, 524-525 (1975). Mears was not a participant in the enactment of the ordinance. Foster, who was a participant, stated that the problems of aesthetics emanated from disrepair of some temporary signs.

remedied by restrictions in the sign ordinance or some other ordinance. The remaining problem of allegedly incomplete messages on some signs on occupied premises, even if aesthetically displeasing to council members, does not warrant the 60-day restriction imposed by the city. The relation between the 60-day restriction and incomplete lettering on signs otherwise properly maintained is too tenuous to be a reason to uphold the restrictions on those grounds.

Once the City of Wyoming decided to permit temporary advertising signs, the Constitution of the United States required it to regulate their use so as to directly advance its interests without being more extensive in regulation than necessary to serve those interests. This it failed to do. No costs, a public question being at issue.

Reversed.