CITY OF ROCHESTER HILLS v SCHULTZ

Docket No. 193500. Submitted April 1, 1997, at Detroit. Decided June 24,
1997, at 9:05 A.M. Leave to appeal sought.

The City of Rochester Hills issued an appearance ticket to Edna H.
Schultz that charged her with violating a Rochester Hills ordinance
forbidding the erection or maintenance of any sign relating to
home-based occupations or professions carried on by occupants of
single-family residential homes. The 52nd District Court, James P.
Sheehy, J., dismissed the charge, ruling that total prohibition under
the ordinance of home occupation signs violates First Amendment
protections of free speech. The Oakland Circuit Court, Steven N.
Andrews, J., affirmed on appeal. The plaintiff appealed by leave
granted.

The Court of Appeals *held*:

1. A four-pronged test is applied in determining the constitution-
ality of the ordinance at issue. The Court of Appeals determines,
first, whether the defendant's expression is protected by the First
Amendment; second, whether the plaintiff's asserted governmental
interest is substantial; third, whether the ordinance directly
advances the governmental interest; and fourth, whether the total
ban on home occupation signs is more extensive than necessary to
serve the governmental interest. The parties do not dispute that the
sign put up by the defendant concerned legal activity and was not
misleading and therefore deserved constitutional protection. Like-
wise, the parties agree that the plaintiff's asserted interests in main-
taining the nature and character of residential neighborhoods are
substantial. However, the ordinance, insofar as it bans home occu-
pation signs, does not directly advance the plaintiff's interest in
maintaining the character, nature, aesthetic quality, property val-
ues, and traffic safety in residential areas and the ban is broader
than necessary to serve the asserted interest.

2. The prohibition of home occupation signs under the ordinance
constitutes an unconstitutional content-based regulation of free
speech, and the plaintiff failed to establish that the defendant has
ample alternative channels for communication. The prohibition is
not a reasonable time, place, and manner restriction on protected
speech.

Affirmed.

1. CONSTITUTIONAL LAW — FREE SPEECH — COMMERCIAL SPEECH — MUNICIPAL ORDINANCES.

A four-pronged test is used by a court to determine whether a municipal ordinance that restricts commercial speech violates the First Amendment; the court must determine, first, whether the expression is protected by the First Amendment; second, whether the municipality's asserted governmental interest is substantial; third, whether the ordinance advances the asserted governmental interest; and fourth, whether the particular restriction is more extensive than necessary to serve the governmental interest (US Const, Ams I, XIV).

2. CONSTITUTIONAL LAW — FREE SPEECH — GOVERNMENTAL RESTRICTIONS.

Government may impose reasonable time, place, and manner restrictions on speech that is protected by the First Amendment as long as the limitations may be justified without reference to the content or message of the protected speech (US Const, Am I).

*Beier Howlett* (by *John D. Staran, Lawrence R. Ternan,* and *George S. Fish*), for City of Rochester Hills.

*Elsa M. Shartsis,* for Edna H. Schultz.

Amicus Curiae:

*Kohl, Secrest, Wardle, Lynch, Clark, and Hampton* (by *John M. Donohue*), for Michigan Municipal League.

Before: MARKEY, P.J., and BANDSTRA and HOEKSTRA, JJ.

PER CURIAM. In this prosecution for violation of a municipal ordinance, plaintiff appeals by leave granted pursuant to MCR 7.205(D) the circuit court's opinion and order that affirmed the district court's order dismissing the prosecution against defendant on the basis that the zoning ordinance she was accused of violating, Rochester Hills Ordinance 200,

§ 4.02, was an unconstitutional restraint on free speech. We affirm.

Defendant owns a home in Rochester Hills in an area zoned for single-family residential use. Defendant sells beauty products from her home. She attached a large sign to a tree on her front lawn to advertise her merchandise and solicit distributors.

Rochester Hills Ordinance 200, § 4.02 allows a residential homeowner to conduct a home occupation[1] at the residence, subject to certain limitations. The ordinance states, in pertinent part:

> a. Home occupations, as defined in this ordinance, on a limited basis, will be allowed provided any such activity:
>
> 1. Does not create a nuisance to the surrounding neighborhood.
>
> 2. Does not become more than an incidental function of the use of the dwelling for residential purposes.
>
> 3. Does not draw truck traffic other than a delivery by a truck no more frequently than an average of once a week.
>
> 4. Does not employ paid assistants or employees other than those living at the premises.
>
> 5. Does not cause more than a nominal increase in traffic.
>
> 6. Does not cause the erection or maintenance of any signs.
>
> 7. Does not take place outside of the dwelling and/or accessory buildings, so as to be a nuisance or not be in keeping with the residential nature of the surrounding residential area. [Rochester Hills Ordinance 200, § 4.02(a)(1)-(7).]

Defendant was issued an appearance ticket for erecting a sign in violation of the home occupation

---

[1] Rochester Hills Ordinance 200, § 2.00 defines "home occupation" as "an occupation or profession customarily carried on by the occupant of a dwelling unit at the dwelling unit as a secondary use which is clearly subservient to the use of the dwelling for residential purposes."

ordinance. She filed a motion in the district court to dismiss the prosecution, arguing that Rochester Hills Ordinance 200, § 4.02(a)(6) was an unconstitutional prohibition of commercial speech. The district court agreed. It ruled that plaintiff could regulate, but not flatly prohibit, the commercial speech at issue and dismissed the complaint. On appeal, the circuit court affirmed the district court's order of dismissal, holding that the home occupation ordinance was an impermissible content-based restriction on protected commercial speech. This appeal ensued.

I

In relevant part, the text of the First Amendment of the United States Constitution states that "Congress shall make no law . . . abridging the freedom of speech." US Const, Am I; see Const 1963, art 1, § 5; see also *Michigan Up & Out of Poverty Now Coalition v Michigan*, 210 Mich App 162, 168; 533 NW2d 339 (1995). The United States Supreme Court has interpreted the Due Process Clause of the Fourteenth Amendment to make this prohibition applicable to states. See US Const, Am XIV; see also *Cincinnati v Discovery Network, Inc*, 507 US 410, 412, n 1; 113 S Ct 1505; 123 L Ed 2d 99 (1993).[2]

Both parties concede that the speech Rochester Hills Ordinance 200, § 4.02(a)(6) seeks to ban is commercial speech in that it "does no more than propose a commercial transaction." *Id.* at 421. Although com-

---

[2] The state constitution also provides that "[e]very person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press." Const 1963, art 1, § 5; *Up & Out of Poverty, supra.* The rights of free speech guaranteed under the federal and state constitutions are considered to be coterminous. *Id.*

mercial speech was once exempted from the protections of the First Amendment, it is beyond dispute that commercial speech is now afforded constitutional protection, although state and local governments have freer rein to regulate commercial speech than political or expressive speech. *Risner v City of Wyoming*, 147 Mich App 430, 433; 383 NW2d 226 (1985); see also *Central Hudson Gas & Electric Corp v New York Public Service Comm*, 447 US 557, 562-563; 100 S Ct 2343; 65 L Ed 2d 341 (1980). The protection afforded commercial speech depends on the nature of the expression and the governmental interests served by the challenged regulation. *Id.*

On appeal, both parties correctly acknowledge that the constitutionality of Rochester Hills Ordinance 200, § 4.02(a)(6) is determined by applying the four-pronged test set forth in *Central Hudson Gas & Electric Corp, supra* at 566, to the facts of the case. First, this Court must determine whether defendant's expression is protected by the First Amendment, that is, defendant must show that her expression concerns legal activity and is not misleading. *Id.* at 563, 566. Second, this Court must determine whether plaintiff's asserted governmental interest is substantial. *Id.* at 566. If these two prongs of the *Central Hudson* test are met, this Court must go on to determine, third, whether the ordinance directly advances the asserted governmental interest, and, fourth, whether the total ban on home occupation signs is more extensive than necessary to serve the governmental interest. *Id.*

In applying the *Central Hudson* test to the facts of this case, plaintiff and defendant agree that defendant's sign deserves constitutional protection because it concerns a legal activity and it is not misleading.

Likewise, both parties correctly acknowledge that plaintiff's asserted interests in "maintain[ing] the nature and character of residential neighborhoods in the City by permitting only minimal, incidental, non-disruptive commercial activity within residential zones, and . . . maintain[ing] aesthetics, property values and traffic safety by keeping residential neighborhoods free of visual clutter" are substantial. See *Risner*, *supra* at 434.

As for the third prong of the *Central Hudson* test, plaintiff bears the burden of establishing that the ban on home occupation signs directly advances its interests in maintaining the character, nature, aesthetic quality, property values, and traffic safety in residential areas. See *Central Hudson*, *supra* at 564-565. We do not believe that plaintiff has met this burden.

Plaintiff has asserted that the ban on home occupation signs directly advances its interest in "protect[ing] and maintain[ing] the nature and character of residential neighborhoods in the City by permitting only minimal, incidental, non-disruptive commercial activity within residential zones." However, by banning signs advertising home occupations, plaintiff has not insured that commercial activity within its residential zones will be minimal, incidental, or nondisruptive. The banning of home occupation signs does nothing to stem the growth of home businesses; it just prevents homeowners from posting signs on their property touting their wares and services. Indeed, plaintiff invites defendant and others to advertise their home occupations in other media that will result in the possible deleterious effect of increasing commercial activity within residential zones by inviting a wider audience to patronize home businesses. More-

over, plaintiff has not submitted evidence to show that the ability of homeowners to place home occupation signs on their property directly increases commercial activity within residential zones. Thus, plaintiff's claim that the ban on home occupation signs directly advances its interest in maintaining the residential character of neighborhoods is not convincing.

Similarly, we find that plaintiff's total ban on home occupation signs does not directly advance its interest in aesthetics. Clearly, home occupation signs represent a small portion of the total signage plaintiff allows homeowners, churches, and businesses to post in single-family residential areas. Plaintiff allows, with restrictions, property owners to post in areas zoned for single-family residential use (1) premises signs at entrances of subdivisions, residential developments, and mobile home parks; (2) real estate development signs naming the property, developer, contractor and subcontractors, engineers, architects, brokers, and financial institutions of real estate developments; (3) real estate signs; (4) model home signs inviting the public to tour model homes; (5) signs containing street numbers, name of premises, name of owner, and name of occupant; (6) signs warning of danger, prohibition, or regulation of the use of property; (7) flags of any state or nation; (8) signs bearing any message posted inside windows; (9) labels identifying the brand name of property to be sold; (10) signs indicating the date of erection of buildings; (11) political signs; (12) garage sale signs; (13) signs of public authorities in pursuance of their public duties; and (14) outdoor church and institutional bulletin boards. See Rochester Hills Ordinance 200, § 21.10. Plaintiff does not even attempt to establish that home occupa-

tion signs are more aesthetically offensive than the plethora of signs it already allows in single-family residential areas such that the total ban of home occupation signs would directly advance its interest in maintaining acceptable aesthetics. Likewise, plaintiff has not produced evidence to show that home occupation signs, as opposed to other allowable signs, present unique traffic hazards or deflate property values such that their total prohibition directly advances plaintiff's substantial interests. Hence, plaintiff has failed to carry its burden under the third prong of the *Central Hudson* test.

Even if plaintiff could make a sufficient showing with respect to the third prong, we would still find its prohibition on home occupation signs unconstitutional because it cannot show that there is a "reasonable fit" between the ban on home occupation signs and its asserted interests. See *Discovery Network, supra* at 416. In relation to this required showing, the United States Supreme Court has stated:

> [W]hile we have insisted that the free flow of commercial information is valuable enough to justify imposing on would-be regulators the costs of distinguishing . . . the harmless from the harmful, we have not gone so far as to impose upon them the burden of demonstrating that the distinguishment is 100% complete, or that the manner of restriction is absolutely the least severe that will achieve the desired end. What our decisions require is a fit between the legislature's ends and the means chosen to accomplish those ends—a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interests served; that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective. Within those bounds we leave it to gov-

ernmental decisionmakers to judge what manner of regulation may best be employed.

... Here we require the governmental goal to be substantial, and the cost to be carefully calculated. Moreover, since the State bears the burden of justifying its restrictions, it must affirmatively establish the reasonable fit we require. [*State Univ of New York Bd of Trustees v Fox*, 492 US 469, 480; 109 S Ct 3028; 106 L Ed 2d 388 (1989) (internal quotation marks and citations omitted).]

See also *Discovery Network, supra* at 416, n 6.

We find that plaintiff's total ban on home occupation signs is broader than necessary to serve its asserted interests. Plaintiff allows property owners to display a diverse range of signs on their land located in single-family residential areas. Recognizing the potential for safety hazards and aesthetic effrontery these signs pose, plaintiff formulated time, place, and manner restrictions governing their placement, appearance, size, and number. The reasonableness of these restrictions is not at issue. Their existence indicates, however, that plaintiff is able to control the side-effects of home occupation signs located in single-family residential areas not by completely banning them but by controlling them with less restrictive and more reasonable time, place, and manner regulations. See *Discovery Network, supra* at 417-418. Plaintiff has simply failed to establish that its total ban on home occupation signs is no more extensive than necessary to further its interests in preserving aesthetics, safety, and neighborhood character. Indeed, the home occupation ordinance already prohibits the home occupation from becoming a nuisance, from causing a more than nominal increase in traffic, and from interfering with the residential nature of the surrounding neighborhood. Thus, it is clear that the

hazards plaintiff seeks to prevent can be easily remedied by restrictions short of a total ban on home occupation signs. See *Risner, supra* at 435. In sum, the ordinance banning home occupation signs fails the *Central Hudson* test.

II

Plaintiff also contends that its ordinance banning home occupation signs is a content-neutral, reasonable time, place, and manner restriction on protected speech and, as such, should be deemed constitutional. Plaintiff is correct that the United States Supreme Court has held that government may impose reasonable time, place, and manner restrictions on protected speech as long as such limitations may be justified without reference to the content or message of the protected speech. *Discovery Network, supra* at 428. Plaintiff fails to establish that Rochester Hills Ordinance 200, § 4.02(a)(6), is content-neutral, however. Although plaintiff argues that its system of ordinances equally prohibits all commercial signs in single-family residential areas, this is not true. In single-family residential areas, real estate developers may erect signs directing the public to subdivisions and model homes and people may erect garage sale signs and signs advertising the name brands of items they wish to sell. Rochester Hills Ordinance 200, § 21.10. Moreover, homeowners can conceivably place advertisements in their windows for commercial endeavors unrelated to home occupations because plaintiff does not regulate "on-premise signs located inside an enclosed building and visible through a window or windows thereof." Rochester Hills Ordinance 200, § 21.10. Thus, under plaintiff's sign policy, whether

any commercial sign falls within the challenged ban is determined solely by its subject, i.e., whether it advertises a home occupation. This is the essence of an unconstitutional content-based regulation of protected speech. See *Discovery Network, supra* at 428.

Moreover, plaintiff bears the burden of establishing that its time, place, and manner restrictions on an entire medium of speech leaves open ample alternative channels for communication. *City of Ladue v Gilleo,* 512 US 43; 114 S Ct 2038; 129 L Ed 2d 36, 47-48 (1994). Plaintiff suggests that defendant may advertise her home occupation in the yellow pages, newspapers, or by distributing handbills. We are not entirely convinced, however, that defendant has adequate substitutes for advertising her home business. The United States Supreme Court has recognized that "[r]esidential signs are an unusually cheap and convenient form of communication. Especially for persons of modest means or limited mobility, a yard or window sign may have no practical substitute." *Id.* at 48. This holds equally true for small home occupations that may not produce significant amounts of income or may not have large advertising budgets. Indeed, plaintiff's home occupation ordinance almost ensures that such operations will remain small and financially unable to gain access to wider media for advertising. Moreover, the person engaged in the home occupation may only desire to reach her neighbors, "an audience that could not be reached nearly as well by . . . means [other than residential signs]." *Id.* at 48-49. Hence, we find that plaintiff has failed to establish

that defendant has ample alternative channels for disseminating her commercial message.[3]

Affirmed.

No taxable costs pursuant to MCR 7.219, a question of public policy being involved.

---

[3] Finally, plaintiff and the amicus curiae contend that if this Court finds Rochester Hills Ordinance 200, § 4.02(a)(6) unconstitutional, residential signs advertising home occupations will deluge communities, resulting in a dramatic decrease in property values and a significant commercialization of single-family residential areas. First, as is evident from the amicus brief, the parties seeking to uphold the constitutionality of the ordinance have misapprehended the source of the asserted dangers. As the amicus brief makes clear, residential signs advertising home occupations are not the problem. Instead, home occupations themselves are the concern in that they "push residential areas in a commercial direction by changing their character," "threaten or do create . . . nuisance[s]," overburden public facilities such as streets and waste disposal systems, and eventually compete with established commercial areas. As plaintiff passed the ordinance allowing home occupations, we can only assume plaintiff considered any of the potential problems that could develop from its doing so.