HATHAWAY, J.
At issue in this case is whether Michigan State University (MSU) Ordinance, § 15.05 is facially unconstitutional. The Court of Appeals reversed the circuit court’s conclusion that the ordinance is unconstitutional under City of Houston, Texas v Hill, 482 US 451; 107 S Ct 2502; 96 L Ed 2d 398 (1987).[1] Because we agree with the circuit court’s analysis and conclude that the language in the ordinance making it an offense to “disrupt the normal activity” of a protected person is facially overbroad, as articulated by the United States Supreme Court in Hill, we reverse the portion of the Court of Appeals’ judgment pertaining to the constitutionality of MSU Ordinance, § 15.05, and we reinstate the circuit court’s decision with regard to this issue to the extent that the circuit court held that the quoted language is facially unconstitutional.
Also at issue is whether MCR 7.101(0) provides for taxation of costs in criminal cases. The Court of Appeals held that costs may not be assessed under MCR 7.101(0) *71 in criminal matters.[2] We agree with the Court of Appeals and, therefore, affirm that portion of its judgment.
I. FACTS AND PROCEDURAL HISTORY
This case arises from a parking citation that defendant received when his car was parked in an MSU parking structure. On the day the citation was issued, MSU parking enforcement employee Ricardo Rego was working on campus. Defendant confronted Rego and asked if Rego was the one who had issued the citation. Defendant was shouting, which led Rego to believe that defendant was acting aggressively. Rego got into his service vehicle and called the campus police.[3] Approximately 10 to 15 minutes passed before the police arrived. During that time, Rego sat in his service vehicle and completed the process for having an adjacent vehicle towed, while defendant stood outside the service vehicle and took pictures of Rego with a camera phone.
Defendant was charged with the misdemeanor offense of violating MSU Ordinance, § 15.05.[4] A district court jury convicted defendant of violating the ordinance. On appeal, the circuit court reversed the conviction on the basis that the ordinance was unconstitutionally overbroad on its face. The circuit court also granted defendant’s motion brought pursuant to MCR 7.101(0) to tax costs against the prosecution.
*72 The Court of Appeals reversed the circuit court’s decision and held that the ordinance is not facially overbroad, and defendant is not entitled to costs.[5] This Court granted defendant’s application for leave to appeal and asked the parties to address “(1) whether Michigan State University Ordinance 15.05 is facially unconstitutional under City of Houston v Hill, 482 US 451 (1987), and (2) whether MCR 7.101(0) allows taxation of costs in criminal cases appealed in the circuit court.”[6]
II. STANDARD OF REVIEW
This Court reviews de novo questions of constitutional law.[7] This Court presumes that ordinances are constitutional, and the party challenging the validity of the ordinance has the burden of proving a constitutional violation.[8]
III. ANALYSIS
We first address whether MSU Ordinance, § 15.05 is facially unconstitutional.[9] When considering a “facial” challenge to the breadth of a law on First Amendment grounds,[10] this Court considers “not merely the spo *73 radie abuse of power by the censor but the pervasive threat inherent in its very existence that constitutes the danger to freedom of discussion.”[11]
Before ruling that a law is unconstitutionally over-broad, this Court must determine whether the law “reaches a substantial amount of constitutionally protected conduct.”[12] The United States Supreme Court has held that criminal statutes must be scrutinized with particular care,[13] and those that prohibit a substantial amount of constitutionally protected conduct may be facially overbroad even if they have a legitimate application.[14] However, “invalidating a law that in some of its applications is perfectly constitutional — particularly a law directed at conduct so antisocial that it has been made criminal — has obvious harmful effects.”[15] Thus, a statute’s overbreadth must “be substantial, not only in an absolute sense, but also relative to the statute’s plainly legitimate sweep.”[16]
In Hill, the United State Supreme Court considered the constitutionality of an ordinance that made it *74 unlawful to “in any manner oppose, molest, abuse or interrupt” a police officer.[17] The Court concluded at the outset that this language prohibited verbal interruptions and, therefore, implicated constitutionally protected speech under the First Amendment.[18] The Court first noted that the ordinance was not limited in any way to fighting words or obscene language.[19] Instead, the ordinance imposed a blanket prohibition on speech that interrupts an officer in any manner.[20] Expressly clarifying that the Constitution prohibits making such speech a crime, the Court explained that “[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.”[21] While the Court acknowledged the difficulty of drafting precise laws, it reiterated that it would invalidate those laws “that provide the police with unfettered discretion to arrest individuals for words or conduct that annoy or offend them.”[22]
Hill also stated that as the Court had “observed over a century ago, ‘[i]t would certainly be dangerous if the legislature could set a net large enough to catch all *75 possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large.’ ”[23] The Court noted that the ordinance’s plain language prohibiting opposing, molesting, abusing, or interrupting a police officer in any manner could be violated on numerous occasions every day.[24] Nevertheless, only those individuals that the police chose to arrest would be charged with violating the ordinance.[25] Hill concluded that because the “ordinance criminalizes a substantial amount of constitutionally protected speech, and accords the police unconstitutional discretion in enforcement,” it was substantially overbroad and facially invalid.[26]
In this case, we address the constitutionality of MSU Ordinance, § 15.05, which provides:
No person shall disrupt the normal activity or molest the property of any person, firm, or agency while that person, firm, or agency is carrying out service, activity or agreement for or with the University.
“The first step in overbreadth analysis is to construe the challenged statute” because “it is impossible to determine whether a statute reaches too far without first knowing what the statute covers.”[27] This ordinance makes it a crime to “disrupt the normal activity ... of any person, firm, or agency.. . carrying out service, activity or agreement for or with the University.” Defendant argues that this language is facially overbroad because it substantially infringes on First Amendment *76 rights. We agree with defendant and hold that the phrase “disrupt the normal activity” in the ordinance is facially overbroad.[28]
The MSU ordinance prohibits disruptions but does not specify the types of disruptions that are prohibited. Thus, the plain language of the ordinance allows its enforcement for even verbal disruptions. Moreover, like the ordinance that the United States Supreme Court invalidated in Hill, the verbal disruptions that the MSU ordinance criminalizes are not limited to those containing fighting words or obscene language. Instead, the MSU ordinance explicitly criminalizes any disruption of the normal activity of persons or entities carrying out activities for or with MSU. Not only does the ordinance fail to limit the types of disruptions that are prohibited, it also protects a much broader class of individuals than the ordinance at issue in Hill. The plain language of this ordinance allows it to be enforced against anyone who disrupts in any way anyone carrying out any activity for or with MSU. Like the ordinance in Hill, which was “admittedly violated scores of times daily,”[29] the MSU ordinance could be violated numerous times throughout any given day given that there are seem *77 ingly infinite ways in which someone might “disrupt” another who is engaged in an “activity” for or with MSU. Thus, we believe that this ordinance, just like the ordinance in Hill, “criminalizes a substantial amount of constitutionally protected speech . . . .”[30]
The Court of Appeals found Hill distinguishable from this case because the Hill ordinance specifically protected police officers who have the power to arrest violators at the officers’ discretion, while the MSU ordinance only prohibits the disruption of MSU employees who do not necessarily have the power to arrest violators.[31] We disagree with this distinction. The MSU ordinance prohibits the disruption of MSU police officers while they are carrying out their duties for the university, and those police officers have the explicit power to enforce the ordinance and arrest violators.[32] Thus, the concerns that Hill had regarding “[t]he freedom of individuals verbally to oppose or challenge *78 police action without thereby risking arrest” apply equally to the MSU ordinance.[33]
Moreover, the distinction regarding whether an individual protected by the ordinance has the power to arrest is an irrelevant one. An MSU student, for example, enrolled in classes on campus is undoubtedly carrying out an activity with MSU and, therefore, is protected by the ordinance. Nothing in the plain language of the ordinance prevents a student who simply feels that he or she has been disrupted by the actions or words of another person from seeking enforcement of this ordinance. Nor does the ordinance language prevent a police officer from choosing to enforce the ordinance when there is a complaint or simply when the officer witnesses somebody disrupting another person’s activity.[34] While not all protected individuals have the same power as a police officer to arrest, the ordinance is nonetheless a criminal statute that subjects the violator to a misdemeanor conviction and provides someone who does have the power to arrest with the opportunity to do so whenever a protected individual is *79 disrupted.[35] Accordingly, this ordinance can be said to “provide the police with unfettered discretion to arrest individuals for words or conduct that annoy or offend them,” just as the ordinance in Hill did.[36] Thus, like the unconstitutional ordinance in Hill, the MSU ordinance is “susceptible of regular application to protected expression,” regardless of whether the protected individual has the power to arrest.[37]
The Court of Appeals further attempted to distinguish Hill because the ordinance in that case used the word “interrupt,” while the MSU ordinance uses the word “disrupt.”[38] The American Heritage Dictionary of the English Language (2006), quoted by the Court of Appeals, defines “disrupt” as “[t]o throw into confusion or disorder” or “[t]o interrupt or impede the progress, movement, or procedure of[.]”[39] The Court of Appeals reasoned that a person can “interrupt an action without causing disorder or confusion, such as by merely asking a question,” but “the same conduct does not necessarily *80 disrupt.. . ,”[40] The Court of Appeals then explained that its reasoning compelled the conclusion that while the term “interrupt” used in the Hill ordinance may encompass a substantial amount of constitutionally protected conduct, “the same can not necessarily be said” of the term “disrupt” used in the MSU ordinance.[41] We disagree with this analysis.
Under the definition chosen by the Court of Appeals, “disrupt” explicitly includes “interrupt.” Other dictionaries similarly include “interrupt” in the definition of “disrupt.”[42] Moreover, the terms “interrupt” and “disrupt” are commonly used as synonyms.[43] Nevertheless, the Court of Appeals’ reasoning implies that the term “interrupt” is capable of encompassing verbal interruptions, thereby implicating constitutionally protected conduct, while the term “disrupt” is somehow limited to nonverbal acts and thereby incapable of reaching protected conduct. However, nothing in the ordinary meanings of “interrupt” and “disrupt” supports this reasoning. More importantly, nothing in the ordinances at issue in Hill or this case creates that distinction.
The dictionary definition used by the Court of Appeals essentially provides that a person can “disrupt” *81 another person by either (1) interrupting that person or (2) causing disorder or confusion.[44] Given this definition, one way to violate the MSU ordinance is to disrupt a person by interrupting that person. There is no question that the United States Supreme Court concluded in Hill that an ordinance broadly prohibiting interruptions reaches “a substantial amount of constitutionally protected speech . .. .”[45] A person may also violate the MSU ordinance, under this definition of “disrupt,” by causing disorder or confusion. This means that if a person asks another person several questions, which causes that other person’s activity to be “thrown into confusion or disorder,” a prohibited disruption has occurred. Both ways in which a person may disrupt another person can be accomplished by purely expressive conduct.[46] And regardless of which definition of *82 “disrupt” is applied, the MSU ordinance can be used to reach and criminalize “a substantial amount of constitutionally protected conduct.”[47]
Finally, we note that our analysis is not affected by Hill’s observation of an anomaly in Texas law whereby the ordinance in that case was preempted to the extent that the Texas Penal Code already covered the proscribed conduct. Because Texas law preempted enforce *83 ment of that portion of the Hill ordinance that criminalized someone who “assault[s]” or “strike[s]” a police officer, “the enforceable portion of the ordinance” made it “ ‘unlawful for any person to .. . in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty,’ and thereby prohibits verbal interruptions of police officers.”[48]
While defendant does not offer any Michigan law similar to the Texas preemption statute, we note that separate statutes and MSU ordinances already criminalize physical assaults. For instance, MSU Ordinance, § 22.01 provides that “[n]o person shall accost, molest, or harass any person upon the lands governed by the Board [of Trustees].” And, of course, MCL 750.81 criminalizes all assaults that occur within the state, regardless of whether they occur on MSU grounds. Thus, for all practical purposes, the only disruptions that the MSU ordinance newly criminalizes are the same nonphysical ones that the enforceable portion of the Hill ordinance proscribed. In other words, just as Texas law criminalized physical assaults on police offic *84 ers in the absence of the Hill ordinance, state statutes and MSU ordinances already criminalize any physical assault that disrupts someone on the MSU campus even in the absence of MSU Ordinance, § 15.05.[49] As a result, the partial preemption of the Hill ordinance does not compel a different result in this case.
Accordingly, we hold that under Hill, the language in MSU Ordinance, § 15.05 making it an offense to “disrupt the normal activity” of a protected person is facially unconstitutional.
Next, we address whether MCR 7.101(0) allows taxation of costs in criminal appeals in the circuit court. MCR 7.101(0) provides:
Costs in an appeal to the circuit court may be taxed as provided in MCR 2.625. A prevailing party may tax only the reasonable costs incurred in the appeal, including:
(1) the cost of an appeal or stay bond;
(2) the transcript;
(3) documents required for the record on appeal;
(4) fees paid to the clerk or to the trial court clerk incident to the appeal;
*85 (5) taxable costs allowed by law in appeals to the Supreme Court (MCL 600.2441); and
(6) other expenses taxable under applicable court rules or statutes.
Defendant argues that he is entitled to reimbursement for the costs he incurred because the prosecution pursued its case against him on the basis of an unconstitutional statute. While the circuit court granted defendant’s motion for taxation of costs, the Court of Appeals reversed that decision on the basis that there is no statutory authority allowing the assessment of costs in this matter. We agree with the Court of Appeals’ analysis of this issue.
MCR 7.101(0) explicitly states that “costs . . . maybe taxed as provided in MCR 2.625.” MCR 2.625 is a rule of civil procedure, which does not apply to a criminal matter.[50] MCR 7.101(O)(5) refers to MCL 600.2441, a statute that applies only to the taxation of costs in civil matters.[51] Because this case is a criminal matter, MCR 7.101(0) does not provide grounds for awarding costs.[52] *86 Accordingly, the Court of Appeals correctly concluded that there is no basis to “undermine the broad statutory discretion granted the prosecution in its charging decisions,”[53] and the assessment of costs against the prosecution in this case was improper.
IV CONCLUSION
We conclude that the language in MSU Ordinance, § 15.05 making it an offense to “disrupt the normal activity” of a protected person is facially overbroad, as articulated by the United States Supreme Court in Hill. Therefore, we reverse the judgment of the Court of Appeals in part and reinstate the circuit court’s decision to the extent that the circuit court held that the quoted language is facially unconstitutional. On the issue of costs, we agree with the Court of Appeals’ conclusion that the circuit court erroneously assessed costs against the prosecution and, therefore, we affirm the Court of Appeals’ judgment in part.
Young, C. J., and Cavanagh, Marilyn Kelly, and Mary Beth Kelly, JJ., concurred with Hathaway, J.

 People v Rapp, 293 Mich App 159; 809 NW2d 665 (2011).

 Id. at 167.

 Rego testified that this was standard procedure when a person is upset about a parking citation.

 MSU Ordinance, § 15.05 provides:
No person shall disrupt the normal activity or molest the property of any person, firm, or agency while that person, firm, or agency is carrying out service, activity or agreement for or with the University.

 Rapp, 293 Mich App at 160, 167. The Court of Appeals did not rule on whether the ordinance is unconstitutional as applied to the facts of this case and, instead, remanded this matter to the circuit for resolution of that issue.

 People v Rapp, 490 Mich 927 (2011).

 People v Armstrong, 490 Mich 281, 289; 806 NW2d 676 (2011).

 Fass v Highland Park (On Rehearing), 321 Mich 156, 161; 32 NW2d 375 (1948); Cady v Detroit, 289 Mich 499, 505; 286 NW 805 (1939).

 We recognize that a facial constitutional challenge is difficult to mount. See Broadrick v Oklahoma, 413 US 601, 615-616; 93 S Ct 2908; 37 L Ed 2d 830 (1973).

 “The First Amendment of the United States Constitution, as applied to the States through the Fourteenth Amendment, provides that the government ‘shall make no law ... abridging the freedom of speech.’ ” *73 Rochester Hills v Schultz, 459 Mich 486, 489; 592 NW2d 69 (1999), quoting US Const, Am 1. This Court has recognized that a party may challenge the “breadth” of “a law written so broadly that it may inhibit the constitutionally protected speech of third parties, even though the party’s own conduct may be unprotected.” In re Chmura, 461 Mich 517, 530; 608 NW2d 31 (2000).

 Thornhill v Alabama, 310 US 88, 97; 60 S Ct 736; 84 L Ed 1093 (1940).

 Village of Hoffman Estates v The Flipside, Hoffman Estates, Inc, 455 US 489, 494; 102 S Ct 1186; 71 L Ed 2d 362 (1982).

 Winters v New York, 333 US 507, 515; 68 S Ct 665; 92 L Ed 840 (1948).

 Hill, 482 US at 458-459, citing Kolender v Lawson, 461 US 352, 359 n 8; 103 S Ct 1855; 75 L Ed 2d 903 (1983).

 United States v Williams, 553 US 285, 292; 128 S Ct 1830; 170 L Ed 2d 650 (2008).

 Id.

 Hill, 482 US at 455. The full text of the ordinance in Hill made it “unlawful for any person to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty, or any person summoned to aid in making an arrest.” Id. However, only the portion of the ordinance making it unlawful to “oppose, molest, abuse or interrupt” an officer was enforceable because the remaining language making it unlawful to “assault” or “strike” a police officer was preempted by the Texas Penal Code. Id. at 460.

 Id. at 461.

 Id. at 462.

 Id.

 Id. at 462-463.

 Id. at 465 (emphasis added).

 Id. at 465-466, quoting United States v Reese, 92 US (2 Otto) 214, 221; 23 L Ed 563 (1876).

 Hill, 482 US at 466-467.

 Id.

 Id. at 466.

 Williams, 553 US at 293.

 Aside from the phrase “disrupt the normal activity,” the MSU ordinance also prohibits “molestfing] the property” of a protected person. Because this alternative basis for enforcement does not implicate speech, we find no need to address whether it is facially overbroad. Moreover, MSU Ordinance, § 49.01 provides that “fi]f any provision of these ordinances or part thereof shall be adjudged invalid by a court..., then such adjudication shall not affect the validity of... any provision or part thereof not so adjudged invalid.” Accordingly, the language in the ordinance prohibiting someone from “molestfing] the property of any person, firm, or agency while that person, firm, or agency is carrying out service, activity or agreement for or with the University” remains in force.

 Hill, 482 US at 466.

 Id.

 The Court of Appeals also observed that the ordinance “prohibits the disruption of MSU employees ... performing their duties.” Rapp, 293 Mich App at 165 (emphasis added). While the ordinance does prohibit the disruption of MSU employees performing their duties, the plain language of this ordinance does not apply to MSU employees only. Rather, it prohibits the disruption of anyone, MSU employee or not, who is “carrying out service, activity or agreement for or with the University.”

 MSU Ordinance, § 4.01 states:
The Board of Trustees entrusts the Police Chief and Director of the Department of Police and Public Safety ... and subordinate officers, including police officers, and also traffic control officers, parking enforcement officers, and other special or limited duty officers, whom he or she appoints, with responsibility for enforcing these ordinances.
Furthermore, MSU Ordinance, § 5.01 allows MSU police officers to “apprehend and arrest any person in violation of any provision of these ordinances and.. . make complaint against such violator before any judge or judicial officer having jurisdiction. ...”

 Hill, 482 US at 462-463. The prevalence of daily ordinance violations alone does not make the law constitutionally suspect; rather, what makes the law constitutionally suspect is the prevalence of violations that encompass protected speech and the threat of selective enforcement of the ordinance against that protected speech.

 The United States Supreme Court has explained that “there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds.” Los Angeles City Council v Taxpayers for Vincent, 466 US 789, 801; 104 S Ct 2118; 80 L Ed 2d 772 (1984). However, the Court cautioned in Hill that “if some constitutionally unprotected speech must go unpunished, that is a price worth paying to preserve the vitality of the First Amendment.” Hill, 482 US at 462 n 11. The Court concluded that the ordinance in Hill was violated many times on a daily basis. Similarly, there is a realistic danger that the broad prohibition in the MSU ordinance is violated regularly.

 In fact, the instant case demonstrates the realistic danger that a wide range of people may enforce this MSU ordinance that imposes criminal consequences. After Rego’s interaction with defendant, Rego called the university police, which he testified is standard procedure when an individual becomes upset about a parking ticket. Despite the fact that Rego was a parking enforcement officer without the power to make an arrest, criminal charges were brought against defendant for violating the MSU ordinance.

 Hill, 482 US at 465 (emphasis added).

 Id. at 467.

 Rapp, 293 Mich App at 165.

 Emphasis added. By its very nature, an interruption affects the “progress, movement, or procedure” of something. In fact, both the Hill ordinance and the MSU ordinance require the protected person to be doing something — the Hill ordinance prohibited interrupting an officer “in the execution of his duty,” Hill, 482 US at 455, while the MSU ordinance prohibits disrupting a protected person’s “activity,” MSU Ordinance, § 15.05.

 Rapp, 293 Mich App at 165.

 Id.

 Random House Webster’s College Dictionary (2d ed, 2001) defines “disrupt” as “to destroy ... temporarily, the normal continuance or unity of; interrupt: to disrupt broadcasting.”

 Burton, Legal Thesaurus (2d ed) (New York: Macmillan Publishing Co, 1992), p 181; see also Roget’s II: The New Thesaurus (3d ed) (Boston: Houghton Mifflin Co, 2003), pp 119, 290 (listing the terms “break,” “discontinuance,” “discontinuation,” “discontinuity,” “interruption,” “pause,” “suspension,” and “disruption” as synonyms); Vocabulary.com <http://www.vocabulary.com/dictionary/interrupt> (accessed July 26, 2012) (listing the term “disrupt” as a synonym for the term “interrupt” and stating that “[t]o interrupt someone is to interfere in their activity, disrupt their conversation, or to disturb their peace and quiet”).

 The dissent acknowledges this very same definition, yet it then asserts that only “some interruptions rise to the level of disruptions ....” Post at 95. This assertion is perhaps based on the dissent’s view that the term “disrupt” requires the creation of “ ‘confusion or disorder.’ ” Post at 91. While it is true that one way to “disrupt” a person is to create confusion or disorder, the quoted definition of “disrupt” clearly indicates that another way to “disrupt" a person is to “interrupt” that person.

 Hill, 482 US at 466.

 The dissent opines that the term “disrupt” suggests a “severe impediment” that “most often result[s] from a nonexpressive, physical disturbance rather than the verbal interjection of a viewpoint.” Post at 91-92. The dissent ultimately concludes that the MSU ordinance reaches less protected expression than the Hill ordinance, yet the dissent also acknowledges that words or expressive conduct can “disrupt.” See post at 92, 104. The task of the court is to determine whether the enactment reaches a substantial amount of protected activity. “[T]hose that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also havelegitimate application.” Hill, 482 US at 459. Moreover, the First Amendment protects more than just verbal speech. See Tinker v Des Moines Indep Community Sch Dist, 393 US 503; 89 S Ct 733; 21 L Ed 2d 731 (1969) (holding that a regulation prohibiting wearing armbands to schools in protest of the Vietnam War and providing for suspension of any student refusing to remove the *82 armbands was an unconstitutional denial of students’ right of expression of opinion); Texas v Johnson, 491 US 397; 109 S Ct 2533; 105 L Ed 2d 342 (1989) (holding that the defendant’s act of burning an American flag during a protest rally was expressive conduct within the protection of the First Amendment); Hill v Colorado, 530 US 703; 120 S Ct 2480; 147 L Ed 2d 597 (2000) (holding that people have the right to protest, display signs, and pass out leaflets, but the state may reasonably regulate the time, place, and manner of these activities); Cohen v California, 403 US 15; 91 S Ct 1780; 29 L Ed 2d 284 (1971) (holding that the defendant could not be punished for walking through a courthouse wearing an offensive t-shirt).

 Hoffman Estates, 455 US at 494. Despite the fact that the MSU ordinance criminalizes constitutionally protected conduct, the dissent asserts that the ordinance is valid because “a university can implement measures to prevent disruptions of the academic environment.” Post at 102. The dissent cites Tinker, 393 US 503, and Hazelwood Sch Dist v Kuhlmeier, 484 US 260; 108 S Ct 562; 98 L Ed 2d 592 (1988), as authority for this proposition. However, those cases do not support the dissent’s position. Both Tinker and Kuhlmeier involved the constitutional rights of minors in public schools. While students do not “shed their constitutional rights to freedom of speech or expression at the schoolhouse gate,” Tinker, 393 US at 506, the United States Supreme Court acknowledged that “the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings,” Bethel Sch Dist No 403 v Fraser, 478 US 675, 682; 106 S Ct 3159; 92 L Ed 2d 549 (1986) (emphasis added). Given that minors do not automatically have the same rights as adults, the Court explained in both Tinker and Kuhlmeier that the rights of students must be “ ‘applied in light of the special characteristics of the school environment....’” Kuhlmeier, 484 US at 266, quoting Tinker, 393 US at 506. This case involves the constitutional rights of anyone who disrupts any person engaging in any activity with MSU and does not involve the unique issues that arise with regard to the rights of minors in public schools.

 Hill, 482 US at 460-461. The dissent appears to read the enforceable portion of the Hill ordinance too narrowly, stating that it applied only to verbal interruptions. However, Hill’s discussion of preemption does not support the dissent’s position. In Hill, the United States Supreme Court explained that because the Hill ordinance made it “unlawful” to “interrupt” a police officer “in any manner,” the ordinance prohibited verbal interruptions and, thereby, affected protected speech. Hill, 482 US at 461. Hill stated that preemption existed with regard to physical assaults and disorderly conduct and cited the relevant provisions in Texas law criminalizing that conduct; the Court concluded that, as a result of preemption, the enforceable provisions of the ordinance did not apply to the core criminal conduct attendant to physical assaults and disorderly conduct. However, Hill did not cite any Texas law that preempted all nonverbal interruptions of police officers, as the dissent suggests. The enforceable provisions of the Hill ordinance still covered many nonverbal interruptions as long as those interruptions were nonassaultive and did not rise to the level of disorderly conduct.

 We reject any concerns that under our decision, certain nonassaultive campus disruptions, such as someone running onto a stadium field or playing loud music to disrupt a class in session, will now be permitted. Such hypothetical nonassaultive disruptions are already prohibited. For example, MSU Ordinance, § 15.06 prohibits an unauthorized person from entering the playing area of any athletic contest or exhibition while the contest or exhibition is in progress. Furthermore, § 15 of the MSU Ordinance Code specifically states that the operation of a sound amplifying device “in such a manner as to create a noise disturbance” is a violation of the section. Moreover, to the extent that other hypothetical nonassaultive disruptions may not he covered by existing prohibitions, the MSU Board of Trustees has the authority to establish new prohibitions against unprotected conduct “as it may deem necessary to secure the successful operation of the college and to promote its designed objects.” MCL 390.106.

 While MCR 6.001(D)(2) generally applies the rules of civil procedure to criminal cases, that rule contains an exception “when it clearly appears” that the rules “apply to civil actions only[.]” MCR 2.625(A) allows “the prevailing party in an action” to be awarded costs, while MCR 2.625(B) further specifies which party is the prevailing party. These provisions clearly appear to “apply to civil actions only” within the meaning of MCR 6.001(D)(2) because they discuss, for example, the prevailing party in terms of “separate judgments,” “different causes of action,” and the “amount” of a judgment.

 MCL 600.2441(2) states that it applies “ [i]n all civil actions or special proceedings in the circuit court... .”

 Defendant’s argument is essentially that the prosecution’s case was frivolous. However, even under MCR 2.625(2), which governs taxation of costs for frivolous claims and defenses, costs may only be awarded in accordance with MCL 600.2591. MCL 600.2591(1) provides that “if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the *86 costs and fees incurred . . ..” Again, MCR 2.625 does not provide statutory authority for taxation of costs in this criminal matter.

 Rapp, 293 Mich App at 167.