# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

VICKIE ROSE HAMLIN,

   Defendant-Appellant.

UNPUBLISHED
December 10, 2015

No. 321352
Ingham Circuit Court
LC No. 13-000924-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

BARBARA ELLEN CARTER,

   Defendant-Appellant.

No. 322207
Ingham Circuit Court
LC No. 13-000917-FH

---

Before: SAWYER, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

In these consolidated appeals, defendants appeal by right their convictions following a jury trial of resisting and obstructing a police officer, MCL 750.81d(1) and trespass, MCL 750.552. In Docket No. 321352, defendant Hamlin was sentenced to 13 months of probation, 36 days of that to be served in jail with credit for 36 days, fine, costs and fees, and restitution. In Docket No. 322207, defendant Carter was sentenced to 13 months of probation, 36 days of that to be served in jail with credit for 36 days, fine, costs and fees, and restitution. We affirm.

These cases arise from an incident where defendants entered a construction site to protest a pipeline project by Enbridge Energy. Enbridge held an easement on the property. Defendants affixed themselves to the construction equipment. Defendants were told to disengage themselves from the equipment and leave, but they refused. They were eventually cut loose and arrested.

Defendants both contend that insufficient evidence supports their convictions. This Court reviews a challenge to the sufficiency of the evidence de novo. *People v Lanzo Constr Co*, 272

-1-

Mich App 470, 473; 726 NW2d 746 (2006). "The evidence is viewed in a light most favorable to the prosecution to determine whether the trial court could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id.* at 474. All conflicts in the evidence must be resolved in favor of the prosecution. *People v Terry*, 224 Mich App 447, 452; 569 NW2d 641 (1997).

Section 552(1) of the criminal trespass statute provides as follows:

(1) Except as otherwise provided in subsection (2), a person shall not do any of the following:

(a) Enter the lands or premises of another without lawful authority after having been forbidden to do so by the owner or occupant or the agent of the owner or occupant.

(b) Remain without lawful authority on the land or premises of another after being notified to depart by the owner or occupant or the agent of the owner or occupant.

(c) Enter or remain without lawful authority on fenced or posted farm property of another person without the consent of the owner or his or her lessee or agent. A request to leave the premises is not a necessary element for a violation of this subdivision. This subdivision does not apply to a person who is in the process of attempting, by the most direct route, to contact the owner or his or her lessee or agent to request consent.

"Merely entering the private property of another is not an offense unless one has been forbidden to do so or refuses to depart after having been told to do so by a proper person." *People v Shankle*, 227 Mich App 690, 694; 577 NW2d 471 (1998). The court instructed the jury consistent with MCL 750.552(1).

There is no dispute that defendants Hamlin and Carter did not have authority to enter on the property. What is in dispute is whether Enbridge had the authority to forbid defendants' entry or to instruct them to leave once there. The answer to this question turns on whether Enbridge was an "occupant" of the property. An "occupant" is defined as "[o]ne who has possessory rights in, or control over, certain property or premises." *Black's Law Dictionary* (9th ed). Although the right-of-way did not grant Enbridge possessory rights in the property,[1] it did give it "control over" the land. The easement indicated that Enbridge had the authority

---

[1] "An easement is a right to use the land burdened by the easement rather than a right to occupy and possess [the land] as does an estate owner." *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 130; 737 NW2d 782 (2007) (internal citations, quotation marks, and emphasis omitted).

to construct, operate, maintain (including cathodic protection systems), clear, inspect (including aerial patrol), remove, abandon in place, reactivate, repair, replace, and reconstruct one or more pipelines, together with any valves, fittings, communication systems, protective apparatus and all other equipment and appurtenances . . . and to conduct such other activities as may be convenient in connection therewith as determined by Grantee, for the transportation of crude oil and petroleum, and any product, by-product and derivatives thereof, whether liquid or gaseous, or any material or substance that can be conveyed through a pipeline; on over, under, and across a strip of land[.] [Emphasis omitted.]

This language gives Enbridge broad control over the property. Enbridge is given authority to monitor the pipeline and to move about the property to make any changes needed to the pipeline, including reconstructing it if deemed necessary. Indeed, Enbridge is given the authority to "conduct such other activities as may be convenient" to the specific activities mentioned, including the authority to determine for itself what those "other activities" are. In accord with this broad grant of authority, Enbridge forbade defendants' entry on the property by posting signs on the site such as "Keep Out Construction Zone" and "Approved Access."

Defendant Hamlin argues that Enbridge's easement is void because the Michigan Crude Oil and Petroleum Act (COPA), MCL 483.1 *et seq.*, expressly abolished any and all inherent or implied rights for a person or corporation to do anything having to do with petroleum pipelines. However, as plaintiff argues, whether the easement was valid under COPA is beyond the scope of this prosecution. In any event, resolution of the sufficiency challenges rests on whether Enbridge was in control of the property, which the evidence established beyond a reasonable doubt.

The elements required to establish resisting and obstructing a police officer are: (1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his duties. MCL 750.81d(1); *People v Corr*, 287 Mich App 499, 503; 788 NW2d 860 (2010). MCL 750.81d(7)(a) defines the term "obstruct" as including "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command."

Defendants argue that the evidence was insufficient to prove all elements of the crime of obstruction because the prosecution failed to show that they disobeyed a lawful command. Defendant Carter's argument focusses on an exchange she had with Sergeant Brown. Also present was codefendant Lisa Leggio:

> *Brown*: I know you saw me earlier, but I've not had the chance to come and speak with you. I've not met you ladies yet, Sergeant Brown, Ingham County Sheriff's Office. You guys have already been told that you are under arrest for trespassing, correct?

> *Leggio*: Uh . . . no . . . I've never been told that I am under arrest for trespassing.

*Brown:* Well, I am going to tell you right now that you are under arrest for trespassing; however, if you guys, um, will willingly detach yourself from the piece, no additional charges will occur.

*Leggio:* Okay.

*Brown:* You will just get the mere trespassing, if not, additional charges such as resisting/obstructing the police officer . . . will be charged.

*Leggio:* Understood.

*Brown:* I am going to give you guys one opportunity to tell me yes or no, right but I just need to know what you intend to do you whether you need to be cut by a special team that will come out or if you guys are going to release and let go.

*Leggio:* Cut it up.

*Carter: nodding*

*Brown*: Okay, cut it.[2]

Defendant Carter argues that what Brown said were queries, not commands. This argument is unpersuasive. Although Brown did say that she was going to give defendants "one opportunity to tell me yes or no," it is clear Brown was directing them to detach themselves from the machinery. Moreover, Brown's commands came after Ingham County Sheriff's Office Detective Ryan Cramer told the protestors that they were trespassing and asked them to remove

---

[2] Brown similarly addressed defendant Hamlin and William Lawrence:

*Brown*: Sergeant Melissa Brown, Ingham County Sheriff's Office, [We're] going to give you one more opportunity to let go, or you're going to be cut out, the cut team is here, they're ready to go, if you refuse to do that there's going to be the additional charge of resisting and obstructing, are you understanding? You two, can I have your last decision? Are you guys willing to let go and peacefully let go, or do you need to be cut out?

*Hamlin*: We're staying.

*Brown*: You're staying?

*Lawrence*: I'm staying.

*Brown*: You're staying? Ok.

themselves from the equipment and leave the property, and after Ingham County Sheriff's Office Deputy Greg Harris had twice warned those on the site that they would be arrested for trespassing if they remained.

Defendant Hamlin asserts that the issue of whether Enbridge was a person the trespass statute protects should have been submitted to the jury because it goes to the issue of lawfulness. "[T]he prosecution must establish that the officers' actions were lawful." *People v Moreno*, 491 Mich 38, 52; 814 NW2d 624 (2012); see also *People v Quinn*, 305 Mich App 484, 494; 853 NW2d 383 (2014). However, there is nothing in the record to indicate that the command given by Brown was unlawful. Defendant Hamlin's property rights were not being invaded, as she had none. And whether Enbridge had a possessory interest in the property is not relevant, because there is no indication that Brown did not believe that defendants were trespassing on the property. Under the circumstances, Brown had reasonable suspicion to arrest defendants for trespassing, *People v Champion*, 452 Mich 92, 115; 549 NW2d 849 (1996), and thus, by extension, for refusing to abide by the command.

Defendant Cater also argues that the trial judge's actions pierced the veil of judicial impartiality. "The Sixth Amendment of the United States Constitution and article 1, § 20 of the Michigan Constitution guarantee a defendant the right to a fair and impartial trial," *People v Conley*, 270 Mich App 301, 307; 715 NW2d 377 (2006), which includes a neutral and detached magistrate, *People v Cheeks*, 216 Mich App 470, 480; 549 NW2d 584 (1996). A trial court is presumed to be fair and impartial. *People v Wade*, 283 Mich App 462, 470; 771 NW2d 447 (2009). However, if it is shown that

> the trial court's conduct pierces the veil of judicial impartiality, a defendant's conviction must be reversed. The appropriate test to determine whether the trial court's comments or conduct pierced the veil of judicial impartiality is whether the trial court's conduct or comments were of such a nature as to unduly influence the jury and thereby deprive the appellant of his right to a fair and impartial trial. [*Conley,* 270 Mich App at 307-308 (internal quotation marks and citation omitted).]

A trial court has wide discretion and power concerning the conduct of a trial, but this power is not unlimited. *Conley*, 270 Mich App at 307-308. For example, a "trial court's comments must be fair and impartial, and the court should not make known to the jury its own views regarding disputed factual issues, the credibility of witnesses, or the ultimate question to be submitted to the jury." *People v Anstey*, 476 Mich 436, 453-454; 719 NW2d 579 (2006) (citations omitted). Opinions formed by a judge on the basis of facts introduced during the proceedings will not amount to a basis for disqualification, however, unless they demonstrate a "'deep-seated favoritism that would make fair judgment impossible.'" *Cain v Dep't of Corrections*, 451 Mich 470, 496; 548 NW2d 210 (1996), quoting *Liteky v United States*, 510 US 540, 555; 114 S Ct 1147; 127 L Ed 2d 474 (1994). Similarly, judicial remarks during the course of proceedings that are critical, disapproving, or even hostile to counsel or the parties will not ordinarily support a finding of judicial partiality. *FMB-First Michigan Bank v Bailey*, 232 Mich App 711, 728-729; 591 NW2d 676 (1998).

Defendant Carter's argument is focused on the court's questioning of her with respect to her testimony regarding whether Brown had commanded her to do something. The challenged questioning is the following:

> *Court*: Ma'am, [Brown] asked you politely to stop this behavior and leave, was that what you said?
>
> *Defendant*: I'm sorry?
>
> *Court*: Didn't you say she asked you to leave?
>
> *Defendant*: She asked me if I would detach myself.
>
> *Court*: Did you do that?
>
> *Defendant*: No, I did not.
>
> *Court*: What is the difference between asking you and commanding you? Does someone have to say the word, I command, in order for you to understand the police officer is directing you to do something?
>
> *Defendant*: Well, I mean—
>
> *Court*: That's what you've said here.
>
> *Defendant*: I was just saying it was a question.
>
> *Court*: It was a question? Did you answer the question?
>
> *Defendant*: I did answer the question.
>
> *Court*: What did you say?
>
> *Defendant*: I said that I wouldn't detach.
>
>          * * *
>
> *Court*: You think she needed to command you further to leave? What did she need to do beyond asking you politely to leave? I'm just asking because you sit here and told this jury you weren't commanded anything, and I thought maybe you had some distinction I am not aware of.
>
> *Defendant*: Well, my only point was that it was a question, and I responded to her that I, that morally I could not detach myself because I was there for a purpose. I was . . . there because I believed in what I was doing.

A trial court's questioning of a witness must be limited in scope, material to the issues in the case, and posed in a neutral manner. *People v Davis*, 216 Mich App 47, 50; 549 NW2d 1 (1996). "As long as the questions would be appropriate if asked by either party and, further, do

not give the appearance of partiality, . . . a trial court is free to ask questions of witnesses that assist in the search for truth." *Id.* at 52.

Plaintiff could have asked these questions. And initially they seem to be focused on understanding what distinction defendant Carter was drawing. However, as the trial court's questioning advances, the court seems to be challenging defendant Carter's perception. However, the court's questions did not evidence a deep-seated favoritism or antagonism that would make judgment impossible.

In any event, any prejudice was cured by the following jury instruction:

Questions put to witnesses are not evidence. My questions to witnesses are also not evidence. You should consider these questions only as they give meaning to the answers you receive. The answers of the witnesses supply the evidence, even on my questions.

Now, my comments, rulings, questions, and instructions are not evidence and I have a duty to see that this trial is conducted under the law and to tell you the law that applies to this matter, but when I make a comment or give an instruction I'm not trying to influence your vote or express a personal opinion about the case. If you believe that I have an opinion about how you should decide this matter, pay no attention to that. You're the judges of the facts and you should decide the case from the evidence that you receive.

"It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

Defendant Carter also asserts that MCL 750.81d(1) is unconstitutionally vague and overbroad as applied in this case. When considering the constitutionality of a statute, the Court begins with the presumption that statutes are constitutional and construes statutes consistent with this presumption unless their unconstitutionality is readily apparent. *People v Rogers*, 249 Mich App 77, 94; 641 NW2d 595 (2001). The party challenging a statute's constitutionality bears the burden of proving its invalidity. *People v Sadows*, 283 Mich App 65, 67; 768 NW2d 93 (2009).To ascertain whether a statute is unconstitutionally vague or overbroad, the Court considers the entire text of the statute and any related judicial constructions. *Rogers*, 249 Mich App at 94.

A statute may be challenged as unconstitutionally vague when (1) it is overbroad and impinges on First Amendment freedoms, (2) it does not provide fair notice of the conduct proscribed, or (3) it is so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether the law has been violated. *People v Noble*, 238 Mich App 647, 651; 608 NW2d 123 (1999). A statute provides fair notice when it provides a person of ordinary intelligence a reasonable opportunity to know what is prohibited. *Id.* at 652. "A statute is sufficiently definite if its meaning can fairly be ascertained by reference to judicial interpretations, the common law, dictionaries, treatises, or the commonly accepted meanings of words." *Id.* But "[a] term that requires persons of ordinary intelligence to speculate about its

meaning and differ on its application may not be used." *People v Hrlic*, 277 Mich App 260, 263; 744 NW2d 221 (2007).

MCL 750.81d provides in part as follows:

(1) Except as provided in subsections (2), (3), and (4), an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

* * *

(7) As used in this section:

(a) "Obstruct" includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command.

Defendant Carter argues that because the statute does not define "lawful command," it does not provide notice of what conduct is proscribed and provides unfettered discretion to the fact-finder. This argument is without merit. A reasonable person of ordinary intelligence would know what is prohibited. *Grayned v City of Rockford*, 408 US 104, 108-109; 92 S Ct 2294; 33 L Ed 2d 222 (1972). That a person might believe a command given is unlawful only to find out that it was does not render the statute vague. The statute cannot account for each and every situation where a command given is lawful, or is not, or even whether the action constitutes a command (as was argued here). "Condemned to the use of words, we can never expect mathematical certainty from our language." *Id.* at 110. Further, "[c]harging the fact-finder with the distinct assignment of determining actual knowledge does not confer unstructured and unlimited discretion on the trier of fact to determine whether an offense has been committed." *People v Nichols*, 262 Mich App 408, 413-414; 686 NW2d 502 (2004).

Defendant further argues that the statute is overbroad because it criminalizes protected speech, thereby impinging on the First Amendment freedoms. In broad terms, "the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of the City of Chicago v Mosley,* 408 US 92, 95; 92 S Ct 2286; 33 L Ed 2d 212 (1972). A law may be found to be unconstitutionally overbroad only where it "'reaches a substantial amount of constitutionally protected conduct.'" *People v Rapp*, 492 Mich 67, 73; 821 NW2d 452 (2012), quoting *Village of Hoffman Estates v The Flipside, Hoffman Estates, Inc,* 455 US 489, 494; 102 S Ct 1186; 71 L Ed 2d 362 (1982). "[C]riminal statutes must be scrutinized with particular care, and those that prohibit a substantial amount of constitutionally protected conduct may be facially overbroad even if they have a legitimate application." *Rapp,* 492 Mich at 73 (citations omitted).

The First Amendment does not extend protection to those refusing to comply with a lawful command. If a defendant is given a command to stop engaging in speech that is constitutionally protected under the circumstances, the command is by definition unlawful. Further, the statute is not constitutionally overbroad as applied here because defendants' conduct

clearly fell within the bounds of behavior the statute was designed to prohibit. Defendants were on notice that they were trespassing and they knew Sergeant Brown was performing her duties. They engaged in an act of civil disobedience in order to make a political point. They had no First Amendment right to engage in criminal trespass. See *Cholmakjian v Bd of Trustees of Mich State Univ*, 315 F Supp 1335, 1345 (WD Mich, 1970) (finding that the complainants were "being prosecuted in good faith for their violation of a valid trespass statute" [internal quotation marks and citation omitted]). Accordingly, defendants have failed to demonstrate that MCL 750.81d(1) is unconstitutionally vague and overbroad as applied in this case.

Affirmed.

/s/ David H. Sawyer
/s/ Michael J. Kelly