**FILED**
**OCTOBER 20, 2016**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33814-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | OPINION PUBLISHED IN PART |
| | ) | |
| DENNIS WALLACE PATTERSON, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Dennis Patterson appeals his convictions for disorderly conduct and interference with a court. He argues a provision of the disorderly conduct statute, RCW 9A.84.030(1)(b), is unconstitutionally overbroad and infringes on protected speech. He also argues the State presented insufficient evidence of his intent to disrupt or interfere with court proceedings.

In the published part of this opinion, we conclude the challenged provision of the disorderly conduct statute does not reach a substantial amount of constitutionally protected speech, and therefore is not overbroad. In the unpublished part of this opinion, we reject his second argument and his argument contained in his statement of additional grounds for review (SAG). We therefore affirm.

## FACTS

Mr. Patterson believes that several elected Stevens County officials, including judges, are not authorized to perform the duties of their offices because they have not complied with state laws relating to taking, filing, and bonding their oaths of office. Although he has brought his concerns to the attention of county and state officials, his concerns have not been addressed to his satisfaction. Believing that certain county officials, including District Court Judge Gina Tveit, were acting outside of the law, Mr. Patterson believed his only option was to present his grievance in person to Judge Tveit in her courtroom before she called a session to order.

On the morning of January 5, 2015, Mr. Patterson and several others who shared his beliefs gathered in the gallery of Judge Tveit's courtroom. Judge Tveit hears the traffic infraction docket on Monday mornings, and her courtroom was full that morning with people waiting to have their infractions considered by her. As Judge Tveit entered the courtroom, Mr. Patterson remained standing and began to loudly read his prepared statement. Judge Tveit told Mr. Patterson that court was in session, but he interrupted her and continued explaining why she lacked authority to judge anyone. Judge Tveit, trying to speak over Mr. Patterson, said a court rule prohibited persons in the audience from speaking. Continuing, she explained court proceedings were recorded, and the reason

2

audience members were prohibited from speaking was to preserve the full record. Judge Tveit, still attempting to speak over Mr. Patterson, said his loud speaking was disrupting court proceedings. She then declared court was in recess, and ordered him to leave. Mr. Patterson continued to question the judge's authority.

A deputy sheriff stationed in the courtroom approached Mr. Patterson and told him he was trespassing. Mr. Patterson did not leave. The deputy physically removed Mr. Patterson from the courtroom and placed him under arrest. As this was happening, another man in the courtroom began to loudly read a prepared statement. He, too, was removed.

Judge Tveit returned to the courtroom. Proceedings were immediately interrupted again by a third person loudly reading a statement. Once this third person was removed from the courtroom, order was restored and Judge Tveit was able to proceed with the morning infraction docket. The interruptions delayed court proceedings by 20 minutes.

The State charged Mr. Patterson with disorderly conduct and interference with a court. At the trial, Judge Tveit testified she has a duty to maintain control of the courtroom, and order is important for effective and efficient administration of court business. She testified she recessed court that Monday morning because Mr. Patterson would not stop talking loudly, and his actions prevented her from hearing cases. Judge

3

Tveit acknowledged there is no procedure in place for a citizen to directly address a judge if they have a grievance or issue with that judge. And a sign posted outside the courtroom informs the public that contact or conversation with a judge outside of the courtroom is prohibited.

A jury found Mr. Patterson guilty of both counts. He appeals his convictions.

## ANALYSIS

A. CONSTITUTIONAL CHALLENGE TO PROVISION OF DISORDERLY CONDUCT STATUTE

Mr. Patterson first argues the provision of the disorderly conduct statute under which he was convicted is overbroad and infringes on constitutionally protected speech under the First Amendment to the United States Constitution and article I, section 5 of the Washington Constitution.

The interpretation of constitutional provisions and legislative enactments presents a question of law reviewed de novo. *City of Spokane v. Rothwell*, 166 Wn.2d 872, 876, 215 P.3d 162 (2009); *Federal Way Sch. Dist. No. 210 v. State*, 167 Wn.2d 514, 523, 219 P.3d 941 (2009). Generally, legislative enactments are presumed constitutional. *State v. Bahl*, 164 Wn.2d 739, 753, 193 P.3d 678 (2008). The party challenging an enactment has the burden of proving its unconstitutionality beyond a reasonable doubt. *Voters Educ. Comm. v. Pub. Disclosure Comm'n*, 161 Wn.2d 470, 481, 166 P.3d 1174 (2007). But in

4

the free speech context, "'the State usually bears the burden of justifying a restriction on speech.'" *State v. Immelt*, 173 Wn.2d 1, 6, 267 P.3d 305 (2011) (internal quotation marks omitted) (quoting *Voters Educ. Comm.*, 161 Wn.2d at 482).

The disorderly conduct statute, RCW 9A.84.030, makes it a misdemeanor to engage in four proscribed forms of speech and/or conduct. The provision at issue here is RCW 9A.84.030(1)(b). It provides that:

> (1)  A person is guilty of disorderly conduct if the person:
> . . . .
> (b)  Intentionally disrupts any lawful assembly or meeting of persons without lawful authority.

RCW 9A.84.030.

Mr. Patterson makes a facial overbreadth challenge to this provision. In a facial challenge, a person may argue the statute is overbroad without first demonstrating that his or her own conduct could not be regulated by a sufficiently specific statute. *Immelt*, 173 Wn.2d at 7. Such a challenge is permitted because

> First Amendment overbreadth doctrine is largely prophylactic, aimed at preventing any "chilling" of constitutionally protected expression. As a result, courts will permit facial overbreadth challenges when the statute in question chills or burdens constitutionally protected conduct. Overbreadth doctrine also has a constitutionally mandated "core", in which a defendant has a right not to be sanctioned except under a constitutionally valid rule of law. When a defendant convicted under a criminal statute challenges the statute as overbroad, he or she is asserting that the conviction rests on an unconstitutional law. Application of the overbreadth doctrine is strong

5

medicine, however, and should be employed by a court sparingly and only as a last resort.

*State v. Halstien*, 122 Wn.2d 109, 122, 857 P.2d 270 (1993) (citations omitted).

"[O]ur article I, section 5 analysis of overbreadth follows the analysis under the First Amendment." *Bradburn v. N. Cent. Reg'l Library Dist.*, 168 Wn.2d 789, 804, 231 P.3d 166 (2010). A court's first task in an overbreadth challenge is to determine whether the enactment at issue reaches a substantial amount of constitutionally protected speech or expressive conduct. *Immelt*, 173 Wn.2d at 7; *City of Houston v. Hill*, 482 U.S. 451, 458, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987). An enactment is overbroad if it "'sweeps within its prohibitions'" a substantial amount of constitutionally protected conduct. *Immelt*, 173 Wn.2d at 6 (quoting *City of Tacoma v. Luvene*, 118 Wn.2d 826, 839, 827 P.2d 1374 (1992)). Criminal statutes must be scrutinized with "particular care," and those that make a substantial amount of constitutionally protected speech unlawful may be held facially invalid even if there is also a legitimate application. *Hill*, 482 U.S. at 459. But "[a] statute or ordinance will be overturned only if the court is unable to place a sufficiently limiting construction on a standardless sweep of legislation." *Luvene*, 118 Wn.2d at 840.

To determine whether a statute sweeps too broadly, we must first construe it. We will abstain from declaring a statute unconstitutional if we can fairly give the statute a narrow construction. "In cases involving a facial challenge to a statute, the pivotal question in determining whether abstention is appropriate is whether the statute is 'fairly subject to an interpretation which will render unnecessary or substantially modify the . . . constitutional question.'" *Hill*, 482 U.S. at 468 (quoting *Harman v. Forssenius*, 380 U.S. 528, 534-35, 85 S. Ct. 1177, 14 L. Ed. 2d 50 (1965)).

The provision here is short and direct, with few words or phrases subject to judicial construction. One word that requires judicial construction is "disrupt." That word can be construed to mean a slight disruption or to mean a substantial disruption. One phrase that requires judicial construction is the exception, "without lawful authority." The lawful authority exception can refer to law enforcement or it can refer to any specific recognized authority—such as a principal in a school or a teacher in a classroom. So to render RCW 9A.84.030(1)(b) constitutional, we give the scope of the statute a narrow reading, and the exception a broad reading. Therefore, we hold RCW 9A.84.030(1)(b) requires the State to prove the intentional disruption was substantial, meaning that it reasonably caused the meeting to be delayed or canceled. We also hold that the State must prove the disrupter did not have specific recognized authority to disrupt the

7

meeting.[1]

"[T]he overbreadth doctrine attenuates as the sanctioned behavior moves from pure speech toward conduct." *Immelt*, 173 Wn.2d at 8. Here, the disorderly conduct provision sanctions conduct more than speech. Although an assembly of people may be substantially interrupted by words as readily as by conduct, the statute is speech neutral, and focuses on the disruption rather than the viewpoint expressed by the disrupter. For example, had Mr. Patterson stood and loudly read the Wizard of Oz, and continued to read loudly after the judge ordered him to stop, the judge still would have recessed court.

In *Colten v. Kentucky*, 407 U.S. 104, 92 S. Ct. 1953, 32 L. Ed. 2d 584 (1972), the United States Supreme Court upheld a provision of Kentucky's disorderly conduct statute. Under the provision in question, a person was guilty of disorderly conduct if, "'with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he ... [c]ongregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse.'" *Id.* at 108 (quoting KY. REV. STAT. § 437.016(1)(f) (1968)). In upholding the provision, the court noted the Kentucky statute

---

[1] Mr. Patterson relies on *People v. Rapp*, 492 Mich. 67, 821 N.W.2d 452 (2012) to establish the provision here is substantially overbroad. Although *Rapp* involved a Michigan State University ordinance that criminalized conduct similar to the provision here, we depart from that court's result primarily because that court broadly construed the ordinance instead of narrowly construing it, as our precedent requires of us.

was construed very narrowly by the state court so to encompass only insubstantial protected speech or activity. *Colten*, 407 U.S. at 111.

Having set forth the above principles, we now undertake the task of weighing "the amount of protected speech proscribed by the [law] against the amount of unprotected speech that the [law] legitimately prohibits." *Immelt*, 173 Wn.2d at 11. We note the provision, as construed, would prohibit very little protected speech or conduct. A person who merely intends to make his or her views known would not be subject to the law's proscription. Instead, only the person who intends to substantially disrupt a meeting so the meeting is delayed or canceled would be subject to the law's proscription.

A person generally has a free speech right to make his or her views known, but the rubric of free speech does not include the intent to substantially interfere with a meeting. Notably, the United States Supreme Court has held:

> The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy.

*Cox v. Louisiana*, 379 U.S. 536, 554, 85 S. Ct. 453, 13 L. Ed. 2d 471 (1965).

We conclude that, because RCW 9A.84.030(1)(b) does not reach a substantial amount of constitutionally protected speech, it is not overbroad.

9

The remainder of this opinion has no precedential value. Therefore, it will be filed

for public record in accordance with the rules governing unpublished opinions.

RCW 2.06.040.

B.     SUFFICIENCY OF EVIDENCE

Mr. Patterson next argues the State failed to prove he intended to disrupt or

interfere with a court proceeding, but only proved he intended to exercise his

constitutional right to petition the government for redress of his grievances. In so

arguing, Mr. Patterson challenges both his disorderly conduct conviction and his

interference with a court conviction.

In a criminal case, the State must provide sufficient evidence to prove each

element of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.

307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). When a defendant challenges the

sufficiency of the evidence, the proper inquiry is "whether, after viewing the evidence in

the light most favorable to the State, any rational trier of fact could have found guilt

beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068

(1992). "[A]ll reasonable inferences from the evidence must be drawn in favor of the

State and interpreted most strongly against the defendant." *Id.* Furthermore, "[a] claim of

insufficiency admits the truth of the State's evidence and all inferences that reasonably

10

can be drawn therefrom." *Id.*

In a challenge to the sufficiency of the evidence, circumstantial evidence and direct evidence carry equal weight. *State v. Goodman*, 150 Wn.2d 774, 781, 83 P.3d 410 (2004). This court's role is not to reweigh the evidence and substitute its judgment for that of the jury. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Instead, because the jurors observed the witnesses testify firsthand, this court defers to the jury's resolution of conflicting testimony, evaluation of witness credibility, and decision regarding the persuasiveness and the appropriate weight to be given the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

As we have held above, the pertinent provision of Washington's disorderly conduct statute required the State to prove Mr. Patterson intended to substantially disrupt the courtroom to cause it to be reasonably delayed or discontinued. Mr. Patterson does not argue Judge Tveit's decision to recess was unreasonable or that he had specific authority to disrupt.

The interference with a court statute provides, in relevant part:

Whoever, interfering with, obstructing, or impeding the administration of justice . . . in or near a building housing a court of the state of Washington . . . resorts to any . . . demonstration in or near any such building . . . shall be guilty of a gross misdemeanor.

11

RCW 9.27.015.[2]

Here, Mr. Patterson argues his only intent was to petition Judge Tveit for a redress of his grievances, not to disrupt the morning's court proceedings. But he did disrupt the court proceedings. And he continued to disrupt the court proceedings after Judge Tveit announced court was in session, and while she articulated the reason why persons from the audience were required to be quiet. Judge Tveit testified she believed it was necessary to call a recess so that order could be restored in the courtroom. If Mr. Patterson's purpose was to petition Judge Tveit and not to disrupt the court proceedings, he might have found a less onerous method than causing a cacophony at the beginning of the morning docket and requiring every person who had court business to wait an additional 20 minutes to have their matters considered.

When evidence supports both an innocent explanation and a criminal explanation, a jury is entitled to infer guilt. *State v. Bockob*, 159 Wn.2d 311, 340-41, 150 P.3d 59 (2006). Mr. Patterson was entitled to make his argument to the jury, and the jury was entitled to disbelieve it. *State v. Montgomery*, 163 Wn.2d 577, 587, 183 P.3d 267 (2008). Because a rational trier of fact could have found that Mr. Patterson acted with the intent

---

[2] RCW 9.27.015 does not contain a mens rea element. However, the court's instructions added an intent element to this offense. We express no opinion as to whether RCW 9.27.015 would be declared unconstitutionally overbroad under the test we

12

to substantially disrupt the courtroom, we will not disturb a jury's finding when it is based on substantial evidence.

C.    APPELLATE COSTS

In compliance with this court's local rule, Mr. Patterson filed a supplemental brief with appropriate argument, supported by a current declaration of financial circumstances, establishing his current and future inability to pay an award of appellate costs. We therefore deny the State an award of appellate costs.

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

In his SAG, Mr. Patterson argues he was arrested and convicted unlawfully because he was exercising his constitutional right. Specifically, Mr. Patterson argues: "It is a foregone conclusion that if even the United States Congress can't criminalize our right to peaceably assemble and redress of our grievances then county and state government officers can't. Absent a constitutional amendment, neither can a jury." SAG at 2.

Although phrased differently, this is the same argument we addressed above: Mr. Patterson was entitled to argue to the jury that his intent was only to peaceably assemble and seek government redress of his grievances. But the jury was also entitled to

articulate today.

13

No. 33814-2-III
*State v. Patterson*

disbelieve him and find that he intended to throw the courtroom into disorder. We all have the right to peaceably assemble and petition the government for redress of our grievances. But as with all constitutional rights, this right is qualified. *See Cox*, 379 U.S. at 554 (the constitutional guarantee of liberty implies the existence of an organized society maintaining public order).

Lawrence-Berrey, J.

WE CONCUR:

Fearing, C.J.

Siddoway, J.