*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

V

GARRETT JENNINGS VAN NET,

    Defendant-Appellant.

FOR PUBLICATION
June 18, 2026
1:50 PM

No. 374944
Delta Circuit Court
LC No. 2023-010872-FH

Before: TREBILCOCK, P.J., and BOONSTRA and LETICA, JJ.

TREBILCOCK, P.J.

The bounds of the First Amendment are not limitless. Neither are the powers of law enforcement when conducting official duties. This case requires that we decide when one must give way to the other.

Defendant, Garrett Jennings Van Net, engaged in conduct protected by the First Amendment by videotaping a lawful traffic stop of another driver. But in so doing, he ignored an officer's lawful commands to move away from the stop to allow law enforcement officials space to safely perform their duties. A jury convicted defendant of obstructing a police officer and on appeal, he mainly contends that conviction violated his First Amendment rights. We affirm.

## I. BACKGROUND

On a dark November 2022 evening just before 11:00 p.m., alongside the highway between Gladstone and Escanaba, Michigan State Police Troopers Cole Tardiff and Gavin LaMarche stopped a truck with a defective headlight. LaMarche, a new trooper who according to Tardiff "needed a lot [of] supervision," approached the driver's side and Tardiff took the passenger's. Tardiff's role during the traffic stop was to supervise LaMarche's performance, observe the occupants, and keep the stop as safe as possible.

With body cameras activated, each questioned the vehicle's occupants. In less than a minute, LaMarche explained the reason for the stop, learned the truck's occupants were driving home to Ishpeming, and collected the driver's license and registration. He returned to the police cruiser and began processing the driver's information.

Tardiff remained at the truck, conversing with driver and passenger, obtaining further details about their trip (to visit family), residency (they recently moved to the state), and what they were hauling in the truck bed (insulation). Just as Tardiff was about to leave the truck and return to the police cruiser to run the passenger's identification, defendant drove by the stop. He is a self-proclaimed "First Amendment Auditor," and as such, observes and films officials' interactions with the public—including, in one instance, a prior stop conducted by Tardiff. So defendant activated his flashers, pulled his truck over in front of the stopped vehicle, exited his truck, and—while holding up his phone to record the incident—approached the traffic stop.

That caused discomfort with the truck's passengers, who can be heard on the videos commenting about his filming them. Tardiff also reacted, stating: "That's close enough right there, sir," and directing defendant to stop about 20-30 feet away. Defendant did not. He instead pressed forward further, each step contrary to Tardiff's additional commands until defendant reached a spot only a few feet from the stopped truck. Tardiff advised defendant to "stay right there," and "not take another step forward." After that command, Tardiff turned and walked toward the police cruiser so that he could assist LaMarche's processing of the stop.

Again, defendant did not comply and he continued to move toward the stopped truck just after Tardiff began walking away. Observing this unusual encounter from the cruiser, LaMarche halted his processing of the driver's information and exited the cruiser. Now joined by LaMarche, Tardiff turned around and said: "Sir, I just told you don't take another step forward. . . . [Y]ou're starting to interfere with my traffic stop." To which defendant repeatedly responded: "Interference is a physical act." Then defendant turned on his phone's flash, shining it directly at Tardiff. "Can you get that flash out of my face, sir?" responded Tardiff, along with repeatedly asking defendant to move away from the traffic stop. The two then bantered about Tardiff's authority to issue orders to defendant.

Tardiff eventually told defendant that if he did not return to where Tardiff had asked him to remain, he would be arrested for obstructing. Defendant took a few steps back toward his own truck but ultimately ignored Tardiff's directive, veering over to the front of the stopped vehicle and then back toward the passenger's side. Defendant also continued to challenge Tardiff's instructions, still with his flash on. Tardiff gave several more warnings to defendant, including a final one that he would arrest defendant for obstructing if he moved forward again toward the stopped truck. Defendant did not comply, took a step forward, and Tardiff arrested him for obstructing a police officer, in violation of MCL 750.81d(1).

Both troopers testified at trial about the impact of defendant's conduct on their traffic stop. They noted, for example, that LaMarche was not able to "run" the driver's information because he needed to assist Tardiff with defendant, and that defendant's interactions more generally impeded their ability to safely and effectively proceed with the traffic stop. A jury ultimately found defendant guilty of obstruction, and this appeal followed.

## II. CONSTITUTIONAL CHALLENGES

Defendant's primary argument on appeal concerns what caselaw has gathered into the large category of "vagueness." See *People v Vandenberg*, 307 Mich App 57, 62; 859 NW2d 229 (2014). "A statute may be challenged as unconstitutionally vague for three reasons: (1) the statute is

overbroad and impinges on First Amendment freedoms, (2) the statute fails to provide fair notice of the proscribed conduct, and (3) the statute is so indefinite that it confers unfettered discretion on the trier of fact to determine whether the law has been violated." *Id.* (quotation marks and citation omitted). It is for these reasons that defendant contends his obstruction conviction under MCL 750.81d is constitutionally infirm—he claims that the statute sweeps in speech and press conduct protected by the United States and Michigan Constitutions, is otherwise vague for lack of fair notice and definitiveness, and that his right to film the traffic stop trumped the troopers' ability to control the scene. We emphatically reject these arguments.

## A. STATUTORY OVERVIEW AND STANDARD OF REVIEW

MCL 750.81d(1) provides that "an individual who . . . obstructs . . . a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony . . . ." A "person" under the statute includes "[a] police officer of this state," MCL 750.81d(7)(b)(*i*), and the term "obstruct" "includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command," MCL 750.81d(7)(a). As to the latter, "obstructing an officer through a 'knowing failure to comply with a lawful command' requires some physical refusal to comply with a command, as opposed to a mere verbal statement of disagreement." *People v Morris*, 314 Mich App 399, 409 n 6; 886 NW2d 910 (2016), quoting MCL 750.81d(7)(a). "[T]he duration of the resistance or the mental state of defendant at the time is of no import, as resistance can occur in even the briefest of moments, and the statute does not require that defendant be found to be free of any mitigating motivation." *Id*. at 414-415.

Statutes are presumptively constitutional, and we construe statutes consistent with this presumption unless their unconstitutionality is readily apparent. *Vandenberg*, 307 Mich App at 62. The party asserting a constitutional challenge to a statute bears the burden of proving its invalidity. *Id*. Finally, our Supreme Court has held that MCL 750.81d does not abrogate the common-law right to resist an unlawful arrest. *People v Moreno*, 491 Mich 38, 58; 814 NW2d 624 (2012).

Defendant did not challenge the constitutionality of MCL 750.81d below, either on its face or as applied to him. This Court reviews unpreserved constitutional questions for plain error. *Vandenberg*, 307 Mich App at 61. Under this demanding standard, defendant bears the burden of demonstrating a "clear or obvious" error and that this error affected his substantial rights. *Id*., citing *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To affect substantial rights, "there must be a showing of prejudice" which affected the outcome at the trial court. *People v Jones*, 468 Mich 345, 356; 662 NW2d 376 (2003). Once those requirements are met, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings,' independent of the defendant's innocence." *Carines*, 460 Mich at 763-764, quoting *United States v Olano*, 507 US 725, 736-737; 113 S Ct 1770; 123 L Ed 2d 508 (1993).

## B. MCL 750.81d IS NOT OVERBROAD, FACIALLY OR AS APPLIED

A statute is overbroad "if in its reach it prohibits constitutionally protected conduct." *People v Burkman*, 513 Mich 300, 336; 15 NW3d 216 (2024) (quotation marks and citation omitted). The overbreadth "must be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *People v Rapp*, 492 Mich 67, 73; 821 NW2d 452 (2012)

(cleaned up). Courts, moreover, are mindful that the "mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge; instead, a challenger must prove a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court[.]" *Burkman*, 513 Mich at 337 (quotation marks and citation omitted). Accordingly, the overbreadth doctrine "may not be casually employed" given its "manifestly strong medicine." *Id*. (cleaned up).

## 1. RIGHT TO FILM POLICE OVERVIEW

The United States and Michigan Constitutions guarantee freedom of speech and freedom of the press. US Const, Am I; Const 1963, art 1, § 5. In particular, they confer a "right to gather news from any source by means within the law . . . ." *Houchins v KQED, Inc*, 438 US 1, 11; 98 S Ct 2588; 57 L Ed 2d 553 (1978) (quotation marks and citation omitted). That basic principle dovetails to a point of agreement. Under the "right to gather" jurisprudence, the First Amendment guarantees the right to film police officers performing their official duties in a public space. See, e.g., *Irizarry v Yehia*, 38 F4th 1282, 1289-1292 (CA 10, 2022) (collecting cases, noting that every federal appellate court to consider the issue has found a First Amendment right to film police encounters).

This right is of growing importance. Citizens who film police officers facilitate transparency and training, and have "both exposed police misconduct and exonerated officers from errant charges." *Fields v Philadelphia*, 862 F3d 353, 355 (CA 3, 2017). See also *Sharpe v Winterville Police Dep't*, 59 F4th 674, 681 (CA 4, 2023) ("Recording police encounters creates information that contributes to discussion about governmental affairs."). To illustrate with perhaps this century's most poignant example—in May 2020, "citizens standing on a sidewalk exercised their First Amendment rights and filmed" as Minneapolis Police Officer Derek Chauvin knelt on George Floyd's neck during an arrest. *Index Newspapers LLC v US Marshals Serv*, 977 F3d 817, 831 (CA 9, 2020).

Relying on these authorities, this Court—albeit in an unpublished opinion—is in accord. In *People v Jennings*, unpublished per curiam opinion of the Court of Appeals, issued September 19, 2019 (Docket No. 344100), p 4, this Court held "there is a constitutional right to film governmental officials engaged in their duties in a public place, including officers performing their responsibilities[.]" (Quotation marks and citation omitted.) We agree and hold the same today.

But this right is not unlimited. "[I]n the interest of securing news or otherwise," the First Amendment does not "confer[] a license . . . to violate valid criminal laws." *Branzburg v Hayes*, 408 US 665, 691; 92 S Ct 2646; 33 L Ed 626 (1972). Nor does an individual possess a blanket, "constitutional right to observe the issuance of a traffic ticket or to engage the issuing officer in conversation at that time." *Colten v Kentucky*, 407 US 104, 109; 92 S Ct 1953; 32 L Ed 2d 584 (1972). Rather, a person's activity may be, as this Court correctly observed in *Jennings*, "subject to reasonable time, place, and manner restrictions." Unpub op at 4 (quotation marks and citation omitted). Accord *Irizarry*, 38 F4th at 1292 n 10; *Turner v Driver*, 848 F3d 678, 690 (CA 5, 2017). See also *Hulbert v Pope*, 70 F4th 726, 736 (CA 4, 2023) (no court "has recognized an unlimited First Amendment right to film police free of otherwise reasonable limitations").

Based on these observations, courts have delineated at least one way to judge these limitations that is applicable here—interference. There is little question, for example, that the "peaceful recording of an arrest in a public space that does not interfere with the police officers' performance of their duties is not reasonably subject to limitation." *Glik v Cunniffe*, 655 F3d 78, 84 (CA 1, 2011). But, as this Court cogently observed in *Jennings*, "having a cellular phone and recording or . . . attempting to record the police does not automatically give an individual carte blanche to ignore police commands aimed at securing or maintaining scene safety." *Jennings*, unpub op at 4. See also *Garcia v Montgomery Co, Maryland*, 145 F Supp 3d 492 (DC MD, 2015) ("[V]ideo recording of police activity, if done peacefully and without interfering with the performance of police duties, is protected by the First Amendment."). Cf. *Colten*, 407 US at 109 ("The State has a legitimate interest in enforcing its traffic laws and its officers were entitled to enforce them free from possible interference or interruption from bystanders, even those claiming a third-party interest in the transaction."). In sum, a police command to an individual exercising his or her right to film a police stop is lawful if it imposes a reasonable time, place, and manner restriction that is justified without regard to content, narrowly tailored to serve a significant governmental interest.

## 2. MCL 750.81d IS FACIALLY CONSTITUTIONAL

With that overview, we turn first (and briefly) to defendant's claim that MCL 750.81d is overbroad on its face.

Binding precedent forecloses this challenge. In *Morris*, this Court rejected the same claim defendant advances here—that MCL 750.81d(1)'s language criminalizes conduct so broadly that "it is possible that asking simple questions of an officer could be construed as criminal." 314 Mich App at 405. This Court disagreed, holding that when read in the appropriate context, the statute does not allow for a conviction solely on the basis of constitutionally protected speech and thus is not facially overbroad. *Id*. at 411 ("[W]e hold that the statute is not facially overbroad because state actors cannot under this statute arrest and convict persons for *only* utilizing constitutionally protected words in opposition to the actions of, for example, a police officer."). Defendant here does not acknowledge *Morris*'s holding on this point or raise any argument suggesting that we may depart from that well-reasoned conclusion, by which we are necessarily bound. See, e.g., *People v Muniz*, 343 Mich App 437, 459; 997 NW2d 325 (2022), citing MCR 7.215(J)(1). He thus cannot demonstrate error, let alone one that is plain, concerning MCL 750.81d(1)'s facial validity.

## 3. MCL 750.81d IS CONSTITUTIONAL AS APPLIED TO DEFENDANT

Defendant's as-applied argument fares no better. "An as-applied challenge . . . alleges a present infringement or denial of a specific right or of a particular injury in process of actual execution of government action." *Burkman*, 513 Mich at 327 (quotation marks and citation omitted). The question thus is whether defendant's conviction for failure to comply with Tardiff's commands ran afoul of these First Amendment principles because he was filming the traffic stop. It did not.

We begin with what was missing from their interaction. At no point prior to defendant's arrest did Tardiff tell defendant to stop filming.[1] During the interaction's entirety, Tardiff only instructed defendant on the location from which he could film (about 10 feet away from the stopped car) and to turn off the flash on the phone that defendant shined directly at Tardiff (which as video makes clear, interfered with Tardiff's vision). Nor did defendant lodge any "verbal criticism [or] challenge directed at" the troopers, *City of Houston v Hill*, 482 US 451, 461; 107 S Ct 2502; 96 L Ed 2d 398 (1987), the freedom to do so being "one of the principal characteristics by which we distinguish a free nation from a police state," *id*. at 462-463. Simply, the content of defendant's speech is not at issue.

Neither is the legitimate government interest at stake for the troopers conducting a traffic stop on the side of a highway. "[T]raffic stops are especially fraught with danger to police officers." *Arizona v Johnson*, 555 US 323, 330; 129 S Ct 781; 172 L Ed 2d 694 (2009) (quotation marks and citation omitted). Officer safety concerns thus "provide[] a compelling reason to permit police officers to take preventative action designed to ensure they are able to complete the traffic stop safely."[2] *People v Campbell*, 329 Mich App 185, 199; 942 NW2d 51 (2019). See also *Gericke v Begin*, 753 F3d 1, 7 (CA 1, 2014) ("Reasonable restrictions on the exercise of the right to film may be imposed when the circumstances"—like traffic stops—"justify them.").

This safety interest was present during the traffic stop into which defendant interjected himself. As the district court reasoned when it bound defendant over, the circumstances included "the dark night, the traffic, the stop, the trainee, [and] trying to get the people [in the stopped truck] processed to leave." These conditions made it important that defendant not physically intrude upon the scene and could lead a reasonable officer to insist that defendant, a bystander, remain a reasonable distance from a traffic stop. Cf. *State v Russo*, 141 Hawaii 181, 193; 407 P3d 137 (2017) (the right to record officers is subject to restrictions "necessary to ensure that law enforcement officials are capable of carrying out their duties and maintaining the safety of both the general public and of the individual conducting the photography or videography"). And as the videos of the incident depict, defendant's presence alarmed the truck's occupants.

The evidence adduced at trial bore out these concerns. LaMarche testified that defendant's interactions hindered the safe and effective processing of the traffic stop, explaining that he felt unsafe because of defendant's repeated encroachments when Tardiff had his back turned. Tardiff too described that defendant's movements prevented him from returning to the police cruiser to help LaMarche run the stopped truck's information through the system. Further, Tardiff did not

---

[1] Indeed, although defendant suggests that Tardiff was biased against him in light of their prior interaction, nothing in the videos of the incident or other evidence admitted below gives rise to the suspicion that Tardiff targeted defendant due to the content of the video.

[2] During oral argument, defendant abandoned his assertion that a violation of MCL 750.81d(1) requires a physical act. As set forth in text, the statute protects police and others "from physical interference or the threat of physical interference." *Morris*, 314 Mich App at 411. See also *People v Miskovich*, unpublished per curiam opinion of the Court of Appeals, issued May 26, 2016 (Docket No. 325727) pp 3-5 (defendant physically obstructed officer from performing his duties by ignoring two lawful orders and placing himself too closely to the officer).

know whether the stopped truck contained weapons, itself an obvious safety concern. See *Campbell*, 329 Mich App at 196-201. Defendant's continued disobeying of Tardiff's commands—like continuing to approach whenever Tardiff turned his back and not providing sufficient space—thus impeded the troopers' ability to conduct the traffic stop. It also prolonged the stop, meaning that the truck's passengers' liberty was affected because they were restrained longer than if defendant had not interfered and increasing the safety risk with more vehicles passing during that extended period.

Tardiff's commands to defendant were also sufficiently narrow to further his safety, the safety of his partner, and the integrity of the traffic stop while also allowing defendant sufficient avenues to continue to film. Defendant makes much of Tardiff's having once told him to return to his truck, seemingly arguing that this directive alone violated his right to film the traffic stop. Although defendant contends that this was tantamount to an order to stop filming, defendant could have filmed from where his truck was stopped—a position nearly identical to a police cruiser dash camera video. But more importantly, Tardiff quickly retreated from this order and, within a minute, simply asked defendant to remain where he then stood—about 8 to 10 feet away. Defendant was, therefore, in a close position from which he could film the traffic stop.

Given the totality of the circumstances of this traffic stop, Tardiff's orders were reasonable and narrowly tailored to serve a significant government interest: the orders permitted officers to efficiently and safely complete a traffic stop and gave defendant a vantage point from which to meaningfully record police activities. Tardiff's commands did not violate defendant's First Amendment rights. Thus, defendant's as-applied overbreadth challenge to MCL 750.81d fails for lack of error, let alone one that is plain.

## B. MCL 750.81d IS NOT VOID FOR VAGUENESS

The last aspect of defendant's constitutional challenge to his MCL 750.81d conviction concerns vagueness. Due process anchors the void-for-vagueness doctrine, which "incorporates notions of fair notice or warning and requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent arbitrary and discriminatory enforcement." *Burkman*, 513 Mich at 336 (quotation marks and citation omitted). An unconstitutionally vague statute "fails to provide fair notice of the conduct proscribed," *People v Harris*, 495 Mich 120, 133; 845 NW2d 477 (2014), or "encourage[s] arbitrary and discriminatory enforcement," *id* at 135. MCL 750.81d does neither.

*Fair Notice.* We measure "fair notice" through the eyes of "a person of ordinary intelligence," asking whether it gives him or her "a reasonable opportunity to know what is prohibited . . . ." *Burkman*, 513 Mich at 336 (quotation marks and citation omitted). And as this Court unequivocally held in *People v Hamlin*, unpublished per curiam opinion of the Court of Appeals, issued December 10, 2015 (Docket Nos. 321352 and 322207), p 8, vacated in part on other grounds and remanded 500 Mich 987 (2017), the statute's obstruction proscription for failing to comply with a lawful command provides the requisite fair notice. Simply, "[t]hat a person might believe a command given is unlawful only to find out that it was does not render the statute vague. The statute cannot account for each and every situation where a command given is lawful, or is not, or even whether the action constitutes a command . . . ." *Id*. That MCL 750.81d(7)(a) uses the expansive term "includes" does not render it vague, as defendant suggests, for *Morris* makes

clear that obstruction "requires some physical refusal to comply with a command, as opposed to a mere verbal statement of disagreement." 314 Mich App at 409 n 6.

*Enforcement Considerations*. We conclude that defendant's enforcement concerns are equally without merit. As set forth above, we cannot agree that MCL 750.81d chills First Amendment protected activity, and once again, its limitation to "physical" interference does not reach pure speech. *Id*. By requiring physical interference and restricting obstruction to "lawful commands," we cannot agree with defendant that law enforcement officials could arbitrarily enforce MCL 750.81d.

In sum, MCL 750.81d is not vague, and defendant cannot establish error, let alone a plain one, meriting relief.

## C. CONCLUSION

For these reasons, defendant's overbreadth and void-for-vagueness challenges to his conviction for obstructing a police officer under MCL 750.81d(1) fail.

## III. OTHER CLAIMS OF ERROR

Defendant also raises several other issues outside of his constitutional challenges to his conviction. None have merit.

## A. CONFLICT OF INTEREST

We start with his claim that the prosecution violated its obligations under *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963), by failing to disclose that Trooper Tardiff's sister, Paige Tardiff, worked in the prosecutor's office. Defendant did not raise this issue below, so we review for plain error. *People v Burger*, 331 Mich App 504, 516; 953 NW2d 424 (2020). But under any standard of review, defendant's claim here fails.

Under *Brady*, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 516-517. A *Brady* violation requires "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Id.* "To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quotation marks and citations omitted).

Defendant's claim of error fails for several reasons. First, he cannot establish suppression for the simple reason that Paige Tardiff's name appears on the proof of service for the information. Second, we cannot see how the evidence of this familial relationship was favorable to defendant, or material. There is no indication that Paige played any role in the prosecution other than serving the information. Most importantly, defendant's interaction with the officers that led to his arrest was captured on video and played for the jury; the relationship between Tardiff and his sister had

no bearing upon his conviction. Defendant cites no caselaw supporting his argument that Trooper Tardiff's familial relationship with someone who performed administrative functions for the prosecutor created *Brady* obligations, and it is not our prerogative to act as his research assistant. See, e.g., *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001). And for these reasons, we also reject defendant's ancillary argument concerning Paige Tardiff's employment creating a conflict of interest for the prosecuting attorney.

## B. MOTION TO QUASH THE INDICTMENT AND FOR A BILL OF PARTICULARS

Defendant's additional challenges to the trial court's denial of his pre-trial motion to quash the indictment and motion for particulars prove no more successful.

We turn first to defendant's claim that the trial court erred in denying his motion to quash, pointing to an alleged lack of evidence presented at the preliminary examination concerning whether Tardiff's order was lawful. But "[i]f a defendant is fairly convicted at trial, no appeal lies regarding whether the evidence at the preliminary examination was sufficient to warrant a bindover." *People v Wilson*, 469 Mich 1018, 1018 (2004). See also *People v Meadows*, 175 Mich App 355, 359; 437 NW2d 405 (1989) (similar). This proposition controls here.

Defendant's arguments about the bill of particulars are similarly unpersuasive. MCL 767.44 authorizes use of a short-form information while providing that "the prosecuting attorney, if seasonably requested by the respondent, shall furnish a bill of particulars setting up specifically the nature of the offense charged." MCR 6.112(E) similarly provides that, "[t]he court, on motion, may order the prosecutor to provide the defendant a bill of particulars describing the essential facts of the alleged offense." The trial court below found, and defendant does not dispute, that the information was not in short form. Therefore, the trial court had discretion under the statute and court rule whether to order a bill of particulars. See *People v Johnson*, 427 Mich 98, 109-110; 398 NW2d 219 (1986) ("When a statutory short-form information is used, the defendant has a statutory right to a bill of particulars, while when the common law long-form of information is used, the trial court may in its discretion order a bill of particulars."). See also *People v Rosen*, 136 Mich App 745, 761; 358 NW2d 584 (1984) ("When an information is not one of the statutory short forms found in MCL 767.44 . . . , we review a denial of a bill of particulars for abuse of discretion.").

The trial court did not abuse its discretion in denying the motion here. "Where a preliminary examination adequately informs a defendant of the charge against him, the need for a bill of particulars is obviated." *People v Harbour*, 76 Mich App 552, 557; 257 NW2d 165 (1977). Here, a preliminary examination took place, which featured extensive evidence concerning the charges, and thus provided adequate notice of them. Defendant complains that it remained unclear whether his conduct inside the police vehicle post-detention was part of the charged conduct, but the prosecutor clarified at the hearing on the motion that she was not claiming that any assault occurred inside the vehicle. Although she said that she wished to have the full interaction played for the jury, the trial court agreed that "[t]here is really no mystery to what the substance is of the prosecution and what is being pursued. It is the full sum of the interactions between the defendant

and Trooper Tardiff." For these reasons, the trial court did not abuse its discretion by denying the motion for a bill of particulars.[3]

## C. SENTENCING

Defendant's appellant brief hints at an argument that the trial court's sentence chills First Amendment rights. But his statement of questions presented does not include a sentencing challenge, so it is not properly presented for appeal. See *People v Clark*, 315 Mich App 219, 233; 888 NW2d 309 (2016).

## D. CUMULATIVE ERROR

Defendant also alleges cumulative error, but defendant did not demonstrate any error—let alone any that in the cumulative could have undermined confidence in the outcome. *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007) (citations omitted).

## E. INEFFECTIVE ASSISTANCE OF COUNSEL

We close our review of defendant's appeal by rejecting his claim that he received ineffective assistance of trial counsel in a litany of ways.

"[E]stablishing ineffective assistance requires a defendant to show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). "Prejudice means a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quotation marks and citation omitted). Because defendant did not preserve a claim for ineffective assistance of counsel, "our review is limited to errors apparent on the record." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

Defendant first contends that his counsel was ineffective because he failed to raise the First Amendment and bill of particulars arguments he unsuccessfully asserts for the first time on appeal here. But "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

We can also quickly dispose of defendant's assertion that his counsel should have challenged the information on the ground that it named LaMarche as the complainant rather than Tardiff. Nothing in the record supports the conclusion that any confusion could result from that

---

[3] Defendant also notes that "the charging document referenced a 'Habitual Offender—Second Offense Notice' without identifying the underlying conviction." He contends that "[t]his omission deprived the defense of essential information" about the "nature and cause of the accusation." But the information contained in the lower court file identifies defendant's 2007 attempted assaulting, resisting, or obstructing a police officer prior attempted felony conviction to be used to enhance his under MCL 769.10. Therefore, defendant's argument fails.

typo—the information states that the charge of obstruction involved defendant's conduct toward Tardiff, providing adequate notice about the nature of the charge.

So too for his related claim that counsel was deficient for failing to challenge the scope of Tardiff's testimony given that LaMarche was the charging officer. But as noted, the information described Tardiff as the officer whom defendant obstructed. Moreover, defendant has cited no authority for the proposition that an occurrence witness's testimony is subject to special limitations only because he or she is not the named complainant. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). In any event, defendant does not indicate how Tardiff's testimony could have been limited, or why such limitations would have undermined confidence in the outcome.

Defendant also argues Tardiff was biased given past interactions with him and that his counsel should have raised it. As we understand the record, his counsel did—he mentioned those past interactions during opening and closing arguments; played for the jury the bodycam footage from a previous stop; questioned Tardiff over his statements from that video that defendant was a First Amendment auditor; and elsewhere questioned Tardiff about his and others' interactions with defendant. This claim is without merit.

Next, defendant contends his trial counsel should have sought a jury instruction defining "lawfulness" under MCL 750.81d(1) as related to officers' constitutional restrictions. But the trial court gave one:

> A police officer is lawfully permitted to communicate reasonable commands regarding the time, place, and manner of conduct of individuals in proximity to a scene where the officer is engaged in his duties if the commands are aimed at securing or maintaining scene safety.
>
> A command is reasonable if you believe that it would lead a reasonable officer to conclude that it is necessary to ensure the safety of all persons involved in a police stop, including the safety of the officer.

We see nothing in this instruction that his counsel should have requested differently, nor has defendant advanced any argument otherwise.

Finally, defendant lodges a few ineffective-assistance points concerning sentencing. First, defendant asserts that his lawyer failed to ensure they reviewed the presentence investigation report (PSIR). But the sentencing transcript reflects to the contrary. He further asserts that defense counsel was deficient because he failed to attend the presentence investigation interview, suggesting that counsel thereby missed an opportunity to raise constitutional objections. But there would have been no point to raising constitutional challenges with a sentencing investigator. Further, defendant points to nothing in the PSIR, or involved with the interview, that was incorrect or misleading. He offers no reason to believe that, had counsel done something different, the outcome would likely have been different.

Defendant has failed to establish ineffective assistance of counsel.

## VI. CONCLUSION

For these reasons, we affirm the trial court's judgment.

/s/ Christopher M. Trebilcock
/s/ Mark T. Boonstra
/s/ Anica Letica